## Case No. 1,407.

### BILL v. NEW ALBANY, ETC., RY. CO.

[2 Biss. 390;[1] 4 Alb. Law J. 49.]

Circuit Court, D. Indiana. Nov. Term, 1870.

FORECLOSURE AGAINST RAILROAD COMPANY—TRUSTEE SHOULD REPORT TO CIRCUIT COURT—INTERFERENCE BY STATE COURT — RECEIVER — WHEN APPOINTED.

1. Where a bill had been filed in this court to foreclose a mortgage given by a railroad company, various interlocutory orders entered, a trustee appointed who had taken possession of the road, and on the faith of these orders, certain bonds had been surrendered, stocks taken, and debts and liabilities incurred, this is the proper tribunal to decide the rights and equities of the parties in interest.

2. Trustee should report to this court—and any of the parties have the right to insist upon such report. He has no right to turn over to another jurisdiction matters which had been partially adjudicated here, and this is the only court whose decision upon the rights involved here is binding on the parties.

3. When a party in interest in such case asks for relief, it is no answer to say that another jurisdiction has attempted to seize the property, and thus place it beyond the power of this court to give relief.

[See Renner v. Marshall, 1 Wheat. (14 U. S.) 215.]

4. Where during the pendency of the suit in this court, the trustee acting with certain bondholders, but without notice to or permission from this court, filed a bill in the state court to foreclose the same mortgages which are the subject of this bill, and making no reference to the case in this court, upon which a receiver was appointed, foreclosure ordered, and sale made by the sheriff, who under order of the court delivered the road to the purchasers; such an interference on the part of the state court with property at the time within the jurisdiction of this court was unauthorized, and it is nevertheless within the control of this court, to adjudicate upon the equitable rights of all who have ever been before it.

[Cited in Union Trust Co. v. Rockford, R. I. & St. L. R. Co., Case No. 14,401; Wilmer v. Atlanta & R. Air-Line R. Co., Id. 17,-775; Owens v. Ohio Cent. R. Co., 20 Fed. 15. See, also, Minnesota Co. v. St. Paul Co., 2 Wall. (69 U. S.) 609.]

5. A bondholder and stockholder is entitled, in such a case, to the equitable interposition of this court to protect his rights under its decrees and to demand an account from the trustee or his representatives.

6. The purchasers and their counsel having had notice of what had occurred in this court cannot claim to be bona fide purchasers.

7. The company being insolvent, the original trustee having died without rendering a proper

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

account to this court, and the road being in the actual possession of parties acting in hostility to its decrees, a receiver should be appointed.

In equity. This was a petition for an accounting and the appointment of a receiver [of the New Albany & Salem Railroad Company,] filed under decrees in this case rendered in June and December, 1858, by John Savage Shaw, a bondholder as well as a stockholder of the road, for himself and all others similarly situated in relation to the property. [Receiver appointed. See note at end of case.]

Williamson was the trustee in five mortgages given by the railroad company in 1851, 1852, 1853, 1855 and 1856, for more than $5,000,000, on all of which interest was due on the first of August, 1857. As by the terms of the mortgages they were liable to foreclosure for non-payment of interest, on that day the trustee filed a bill to foreclose the same in this court, and asking for the appointment of a receiver. On the second of November, 1857, the motion for a receiver was denied, with leave to renew the same upon any new statement of facts; but the company was required on the first of January, 1858, to make a report of the gross and net earnings of the road, and one-half of the net earnings was to be set aside for the payment of the interest of the bonded debt of the company, and the other half for the payment of its floating debt. For opinion then rendered, see volume 1 of this series, p. 198, [Williamson v. New Albany, etc., R. Co., Case No. 17,753.] On the 8th of December, 1857, the court, acting upon the principle that the road was within its control, enjoined the collection of certain executions on judgments obtained in the courts of the state. On the 23d of June, 1858, Mr. Williamson, the trustee, filed a petition in the nature of a supplemental bill, alleging that a basis of settlement had been agreed on between the company and three-fourths in value of all the holders of bonds issued. Some of the stipulations of the settlement were that the time of payment of a portion of the bonds was to be extended; certain of the bonds, in a contingency named, were to be converted into stock; certain holders of stock might surrender the same and receive a per centage of the new stock, and a new organization of the company was provided for. The supplemental bill stated that it was for the interest of all parties that the agreement should be carried out, and asked that it should be ratified and confirmed by the court. The trustee also requested that he might have the right to borrow two hundred thousand dollars on the security of the road in order to pay some pressing claims, and that the possession of the road might be given him. Accordingly, on the 23d of June, 1858, a decree was rendered ratifying and confirming the basis of settlement as set forth by the trustee, and also enjoining certain parties from proceeding under executions against the company issued from the courts of the state. All stockholders and bondholders who had not subscribed to the agreement, were to have ninety days to come in and avail themselves of the benefits of the decree. The road and its fixtures and appurtenances were ordered to be delivered to the trustee until certain sums of money were paid, and whenever they were repaid in full, the trustee was to surrender at their request in writing to the directors of the company, the road and its appendages. In the meantime the road was to be operated by such directors, officers, agents and employes as the trustee should deem best. All questions touching the payment of costs and the expenses of the trustee were reserved by the court for further consideration. This is called in the record an interlocutory decree.

On the 16th of December, 1858, what is termed a final decree was entered, determining the interests under the mortgages and in the capital stock. The road was, on certain conditions, surrendered to the holders of the second and third mortgages, and income bonds, and they were declared to be tenants in common of the road in named proportions; but this was to be subject to certain other mortgages mentioned, the lien of which was to remain valid, and save the incumbrances and claims specifically provided for in the decree, they were to be invested with the whole property. The decree also declared how the net earnings of the road, after the first day of May, 1859, were to be appropriated, and it gave the holders of certain bonds of the capital stock the right to surrender the same and receive an interest in the road; and they were prohibited from enforcing their claims in any other way. This decree was in terms made subject to that of June, 1858, and both were entered with the consent and acquiescence of all the parties in court—complainant, defendant, stock and bondholders.

The order made on the 2d of November, 1857, as to the reports of the earnings of the road, was complied with until changed by the subsequent order of the court as heretofore stated.

On the 28th of May, 1859, the trustee, by supplemental bill, asked and obtained from the court an order restraining certain judgment creditors from interfering with the property of the road, and the trustee and his successors and the holders of the bonds, in conformity with the previous orders of the court, were adjudged to have and enjoy the possession of the property surrendered. Various unimportant orders were made and the cause regularly continued to November term, 1861, when the trustee filed a supplemental bill, in which he referred to the decrees rendered by the court, and stated that the action was still pending, and that no final decree for sale had ever been rendered. He also declared that the company had changed its name, and was

then known as the Louisville, New Albany and Chicago Railroad Company. The trustee submitted to the court the question whether such property should be sold, as was necessary to pay certain indebtedness, or whether the road should be sold as an entirety, and then the surplus be divided between the holders of bonds and mortgages according to their respective priorities. On the 17th of December, 1861, the court made an order referring to the supplemental bill, as one praying for a decree, that the railroad and appurtenances should be sold under a foreclosure of the mortgage mentioned in the same, that notice be given by publication to all persons interested to show cause at the next term why the prayer of the bill should not be granted. The order provided that the clerk should make publication unless the trustee should direct otherwise, and the evidence is that the trustee did so direct, and accordingly no publication was ever made. Nothing further appears on the record, except some orders about the payment of counsel fees, and the usual order of continuance until the November term, 1865, when the trustee filed a petition for the sale of certain property not used in operating the road, and also for the sale of the Gosport branch; and the court, on the 8th of December, 1865, authorized the trustee to make the sale. The cause was then regularly continued until the May term, 1869, when the trustee on the 6th day of July made a report that on the 15th of August, 1867, he had sold the property as authorized by the court.

Before this report was made, and during the spring of 1868, Henry H. Horner, a bondholder under one of the mortgages, filed a bill to foreclose the same in the court of common pleas of White county, in this state, which afterwards was removed by change of venue to Tippecanoe county. To this bill an answer was filed, alleging the pendency of the case in this court as a reason why the state court should not take jurisdiction of the cause. But that court held that as Horner had not become a party to the agreement on which the decree was rendered in this court, he was not bound by it. The state court announced its readiness to appoint a receiver of the road, but on the 20th of September, Horner, without any further action of the court, dismissed his bill. The counsel and parties who defended the suit of Horner, acquiesced in the opinion of the state court, and did not come to this court to request action in the subject matter of the controversy.

During all this time, from the date of the decrees rendered in this court, Williamson remained in possession of and operating the road, but up to September, 1868, had filed no reports, and had asked for no further action of this court than as heretofore stated.

On the 4th of September, 1866, Williamson, without notice to or permission from this court, filed a bill in the court of common pleas of White county in this state, to foreclose the same mortgages which were the subject of the bill filed in this court in August, 1857. He, as trustee, did this, as it was said, on demand of the bondholders, many of whom had been parties to the agreement ratified by the decree in June, 1858. The bill did not refer in any way to the case in this court, but stated that in 1859 the name of the company had been changed under the authority of law to the Louisville, New Albany and Chicago Railroad Company, and that the company had not held an election for directors, nor had there been a meeting of directors for eight years. On the 22d of September, 1868, the court of common pleas, on motion of the plaintiff, appointed a receiver of the road, and authorized him to take possession, and the receiver did accordingly, on the first of October, take possession of the road. The company was defaulted, and on the 25th of January, 1869, a final decree of foreclosure was entered, and an order for the sale of the road and its appurtenances made, being the entire road from New Albany to Michigan City. On the 8th of April, 1869, the sheriff of White county in obedience to an order to that effect from the court, sold the road to certain parties, eight and ten per cent. bondholders, for the sum of $100,000, though they state that their agent was authorized to bid not exceeding two millions of dollars, nearly the whole of the $100,000 being paid by pro rata credit on the bonds held by the bidders. Objections were made to the sale on various grounds, but they were all overruled by the court, and the sale confirmed, and the sheriff ordered to make a deed, which was accordingly executed to the purchasers on the 26th of May, 1869, which deed was afterwards approved by the court, and ordered to be delivered to the purchasers, and the receiver was required to deliver up to them possession of the property. Under this decree the purchasers took possession, and have been since the 21st of June, 1869, operating the road under the name of the Louisville, New Albany & Chicago Railway Company, and it was said have converted their bonds into stock, or have surrendered the greater part of the eight and ten per cent. bonds to the court of common pleas of White county.

In August, 1869, Williamson died, and under the mortgages, Bill, the present complainant, was the alternate trustee. On the 10th of November, on motion of Shaw, who had leave to file a petition showing his right to the equitable interposition of the court, the alternate trustee was required to appear at the next term, and cause himself to be substituted as complainant; Bill then moved to dismiss the cause, and the motion to dismiss and the motion of the petitioner to be heard on his equities were fully argued before the court, (Davis, J., at that time alone holding the court), and on the 4th of June,

1870, the court overruled the motion to dismiss, and gave Shaw, the petitioner, leave to file any further pleadings, in conformity with the equity practice of the court, requisite to determine his rights. Under this leave, Shaw presented a petition alleging that he is a bondholder under the mortgage of 1855; that he is the owner of one thousand and ninety shares of the capital stock of the company, issued in lieu of bonds which, with the interest warrants attached, were surrendered to the company under the agreement embodied in the decree of December, 1858; that under the decree of June, 1858, the company on the 6th of October, 1858, executed to Williamson an instrument in writing confirming to him and his successor, October, 1868, to James F. Joy, (the receiver sion of the property, delivered the same in decree; that the trustee still having possessors the powers intended to be vested by the appointed by the court of common pleas of White county) without any authority from this court, but at the instance of a majority of the holders of the bonds then outstanding, who continued in possession of the same till it was passed over to certain parties in June, 1869, (the bondholders and purchasers under the decree of the court of common pleas of White county) at whose instance, among others, the bill was filed in this case, in August, 1857; that a large portion of the bonds secured by mortgage of 1853, of 1855, and of 1856, with the interest warrants, were surrendered, and were converted under the decree of this court into the stock of the company; that a part of the earnings have not been accounted for, and of those he had no knowledge until the affidavits were filed in June last in this application; that Williamson, the trustee, was managed by certain of the bondholders so as to act in their interest alone; that these parties had denied the rights of the petitioner and those like him to share in or interfere in the management of the property; that since they have had control of the road, there have been large earnings of which they have made no report to this court, nor to any one not connected with the usurpation; that he had no knowledge of these acts until the parties had possession of the road; that Bill, the alternate trustee, was in collusion with those parties; that an account should be taken of the earnings of the road from the time it was placed in the hands of Williamson and of the amount of bonds outstanding, and converted into stock, and of the indebtedness and assets of the company; and that a receiver should be appointed.

J. McDonald and Mr. Hughes, for petitioner.

Hendricks, Hord & Hendricks and Henry Crawford, for defendants.

DRUMMOND, Circuit Judge. This court, in June last, decided that Bill could not, on his mere motion, dismiss the suit, to the prejudice of the parties interested in the trust, and that Shaw, as bondholder and stockholder, claiming rights under the decrees of this court, was entitled to be himself heard in support of those rights. And, in a certain sense, the questions now remaining are, whether he has made out in his petition a case for the equitable interposition of the court; and, what relief, if any, the court can give to him and others standing in like relation to the property.

The bill filed in this court was for a foreclosure of the mortgage and a sale of the property, because of the non payment of the interest. For all purposes contemplated by the bill, originally, the trustee properly represented the parties interested in the mortgages, and if the case had gone on in the ordinary way no other parties than the trustee and the company would have been brought in. But after the case had been some time pending, a compromise agreement was made, which was afterwards ratified by the court in the form of a decree. It may be conceded, though the decree of December, 1858, seems to have been drafted on a different hypothesis, as one of the terms of the decree in June was that bonds should be turned into stock, that even the order of the court could not make that effectual without the consent of the bondholders. That would be changing the contract without their assent. The decrees were taken by consent, and on the presumption that all would unite, as nearly all did. But, however this may be, it is certain that by the decrees of this court great changes had been made, with their acquiescence, in the original rights of many of the bond and stockholders. On the faith of the decrees, bonds had been surrendered and stock taken, debts and liabilities had been incurred, and the property pledged to secure them. It had been placed in the hands of a trustee to carry out the orders of the court. It is true the decrees had undertaken to go too far, that is, to order certain things to be done depending upon conditions which might never be complied with, a very common error made by counsel when drafting uncontested decrees to which the attention of the court is not particularly called. In point of fact in this case, if the claims referred to in the decrees were paid in 1864, and by their terms the property could be surrendered by the trustee, there seem to have been no directors of the company to whom to surrender it. They had ceased to exist, the entire control and management of the road being then in the hands of Williamson. Although it is said he kept possession of the road at the request of the bondholders, yet no formal act appears to have been done. There can be no doubt it was the imperative duty of the trustee to report the facts to this court, and ask for its direction. And, notwithstanding the opinion of the state court on this point, it is

equally clear that, under the circumstances of the case, if any bondholder under the mortgage, who had not become a party to the agreement in this court, wished for a foreclosure of the mortgage, or any relief, this was the proper forum to approach for that purpose. The rights of the parties were adjudicated here. The property, for certain purposes, was here. It was not possible that the cause could be divided into fragments, and, in the actual state of affairs, one party in interest go to one court, and another to a different court, for the enforcement of his equitable rights. If the understanding of the parties and the terms of the decree were entirely carried out, there would be no difficulty; but if in that way their expectations were not realized, and there should be a failure to satisfy the claims of the creditors, there would seem to be no question that this court was the proper tribunal to do equity, because it was only by control over the orders of the court, already made, that this could be accomplished. The decree did not require the trustee to report his acts and doings to this court, but the implication is strong that he should have so done. The interests of the company, as well as of the bondholders and creditors represented in the compromise agreement and decree, very much depended upon the management of the road by the trustee. It was their right to know through this court whether the trustee had fulfilled the duties of his trust. The evidence shows that he misappropriated the funds of the road. If Williamson were living, can there be a doubt that any party to the decree of this court would have the right to insist that he should report his doings as trustee to this court?

It would be impracticable for the court to adjust the equities of the parties without knowing the manner in which the duties of the trust had been performed, if it became necessary to act on an application. For example, how can the court settle the equities of Shaw without knowing what has been done by his trustee? And certainly the court of common pleas of White county could not enter a proper decree without the same knowledge. Williamson had been in possession operating the road for ten years. The rights of all parties were seriously affected by the disposition he made of the earnings of the road during that time, and by the manner in which he performed the duties of his trust. Any adjudication of the rights of the parties under these five mortgages, without regard to what had been done in this court, would necessarily be imperfect, and therefore inequitable, and for the simple reason that interests had been acquired here which could not be changed or modified elsewhere without the consent of the parties. In any controversy thereafter it was not possible to treat the decrees of this court as though they had never been made. That is what the court of common pleas of White county seems, in one

sense, to have done. In fact, nowhere in the bill or in the decree in that court is there any intimation of the decrees of this court.

Then as to the action of Williamson, the trustee: He had never fully reported to this court what he had done as to the expenses and earnings of the road, or as to the road itself—whether he still held it or had turned it over to the bondholders. In November, 1861, he stated in a supplemental bill that the action was still pending in this court, and that no final decree of sale had ever been rendered, and submitted to the court, among other things, the question whether the whole road should be sold, and the court made a rule to show cause why this should not be done, on which rule there was no action. In 1865 he applied for an order to sell the Gosport branch, which was granted. Under these circumstances, if a sale of the road was desired either by the trustee or those bondholders who were connected with the decree of this court by appearance here, it would seem that application should be made to the same court for the sale of the property. It could hardly be said then to be fair dealing, while the case was thus proceeding here, for the trustee and some of the bondholders to turn over to another jurisdiction rights which had been partially adjudicated, thus ignoring everything that occurred here. It is true that they seem to have had the opinion of a state court to justify their action, but as this court was the one in which the controversy was originally commenced, and in which, for certain purposes, it was yet pending, it is the only tribunal whose decision was binding upon the parties in this court. Before he adopted so grave a measure, therefore, and one calculated so much to complicate and embarrass matters in dispute, he should have come to this court for directions and relief. One litigation should have been disposed of before another on the same subject-matter was begun. The fact appears to be that the trustee and the first bondholders thought that the last bondholders had ceased to have any interest in the road, because of the inadequacy of the property to respond to inferior liens, and acted accordingly—a conclusion which could only be reached under the authority of this court. Inasmuch, therefore, as the case was still here, as for certain purposes the property was subject to the control of the court, in the interests of the parties before it, to appeal to another court to foreclose the mortgages and sell the road was unwarranted, and not consistent with the obligations due to all. The trustee was responsible just as much to others as he was to those who demanded he should foreclose, and whose instructions he obeyed. If, then, it was a breach of duty for Williamson to proceed in the court of common pleas of White county, as I think it was, what is the effect upon the right of this court to retain jurisdiction of the cause and of the subject-matter? There can be no doubt it has

created great confusion in the position of those claiming under the mortgages, and embarrassment in the court to deal properly with their interests. It has thus brought about an apparent conflict between courts, state and federal, which should always be avoided. But the conflict arises from acts done after this court had obtained jurisdiction of the cause, and for which, therefore, it cannot be justly held accountable, and when a party affected by an order or decree entered in a pending cause asks for relief, it is no answer to say that another jurisdiction has attempted to seize the property, and thus place it beyond the power of the court to give relief. The question always must be, is it competent for the court to act? If so, its duty is plain, and it necessarily follows from what has been said that, in my opinion, the property is still within the control of this court to adjudicate upon the equitable rights of all who have ever been before it. It is said that those interested delayed in making application to call on the trustee to account. But he was a trustee, who could not, therefore, complain of laches. And, besides, they had the right to presume that the trustee would protect their interests, acting under the sanction of the court. It may not be out of place to refer to the practical result of the wrongful act of the trustee, though if on any other ground it could stand, it might not be material. At the sale under the decree of the court of common pleas of White county, the entire road from New Albany to Michigan City, 288 miles, a property worth some millions, was purchased by seven persons, some of whom say they were acting for bondholders, for the sum of $100,000. If that purchase is unassailable, then these seven bondholders, or those they represent, acquired it absolutely, and any other creditor is without remedy. If they have allowed other bondholders, not connected with them, to convert their bonds into stock, that was a matter of favor and not of right. In April, 1869, the property was sold, and in November of the same year the petitioner made his application to this court. It has been said that admitting the decree of the state court was rendered without reference to authority of this court, yet that a just result was reached. The answer is—even if that might change the aspect of the case—this court cannot know that to be so. The data on which to arrive at a true result is not before it, and cannot be until it is made acquainted in a proper way with what the trustee has done.

It is a necessary conclusion from what has been said, that the petitioner is entitled to the equitable interposition of the court, to protect his rights under its decrees, and to demand an account from those who represent the former trustee.

The thirty-eight miles of road from Michigan City to the east line of Illinois has been operated by the Michigan Central Railroad, a corporation of the state of Michigan, which constructed, it is said, at its own expense, that portion of the road, under a contract made with the New Albany and Salem Railroad Company in 1851. No part of the earnings of that section has ever been accounted for to the defendant or to its successors. And though that line was not included in any of the mortgages, yet there can be no doubt that as the defendant is insolvent the creditors of the defendant may be entitled under certain circumstances to an account of the earnings, expenses and cost of the construction of that part of the road; but as to that part no order will be made.

Whether a receiver should be appointed, is a question often attended with difficulty, and to answer it properly is one of the most embarrassing duties a court of chancery has to perform. The difficulty is increased by the peculiar situation of the property in this case, claimed under a decree of a state court, but it would seem to follow, if the principles heretofore stated are sound, that this court has not lost control of the subject matter of the suit, and that the interference of the state court in dealing with and disposing of property at the time within the jurisdiction of this court, was unauthorized. The only inquiry, therefore, is whether there is any necessity for the appointment of a receiver while the court is settling the rights of the parties. The company is insolvent, the former trustee is dead, having made no reports to this court of the manner in which he performed his trust; the present trustee caused himself to be made a party to the litigation in the state court. After the death of Williamson he sought to dismiss the proceedings in this court. The parties at present in possession of the road are acting in hostility to the decrees of this court, and the interests thereby adjudicated. It would appear to be impossible to give any relief to the petitioner and others in similar relations, unless the court shall take control and possession of the property.

The parties now in possession can hardly claim to be bona fide purchasers, without notice, for they and their counsel had knowledge of what had occurred in this court. The road seems to have been operated by Williamson at first in the name of the defendant, and then as the Louisville, New Albany and Chicago Railway Co., and since the sale and organization under the decree of the state court the present possessors have called it the Louisville, New Albany and Chicago Railway Company, keeping the name and business distinct in each case.

Very possibly difficult questions may arise out of the sale under the decree of the state court, where the interests of third parties may be affected, but it is to be hoped rights may be adjusted so as to give proper protection to all who ought to have it.

It is claimed that those who are now in possession of the road have not been made parties to this proceeding, and have not been

impleaded so that they could answer. Due notice has been given of this motion to the trustee and to the superintendent of the present company, which professes to represent those who purchased under the decree of the state court. The application has been pending since November, 1869. The purchasers themselves have filed an affidavit in court, and there can be no question but all parties have had ample opportunity to be heard. The motion of the petitioner has been fully and ably argued by the counsel on both sides, and the court has had all the assistance in the investigation of the case which their zeal and ability could furnish.

My Brother GRESHAM did not hear the argument at the present term, but the questions were, more or less, fully discussed before him at the November term last year, when the petitioner made his application, and he has been consulted in the case, and concurs in this opinion.

We think, therefore, a receiver should be appointed.

NOTE, [from original report.] For the opinion of the court in this case, on motion for appointment of a receiver, and construction of powers of the trustee, consult Williamson v. New Albany, etc., R. Co., [Case No. 17,753.]

[After the appointment of the receiver in the principal cause, Charles E. Bill, the successor of the original trustee, filed a supplemental bill for the foreclosure of mortgages remaining in force, the questions arising under which were subsequently appealed to the supreme court, and determined in Shaw v. Bill, 95 U. S. 10.]