# CHARLESTON.

## WOOD *v.* WOOD.

Submitted June 25, 1901. Decided December 18, 1901.

1. PARTNERSHIP—*Bill to Dissolve—Sufficiency.*

    A bill filed for the purpose of establishing the fact of a partnership between plaintiff and defendant and having same dis-

solved and the partnership accounts settled, which partnership
is denied by the defendant, and the allegations of the bill are
sufficiently definite to show an agreed partnership and that the
same went into actual operation, and prayer "that the status of
the parties, plaintiff and defendant, be ascertained and settled;
a partnership decreed as existing between them; the interest
of each partner be ascertained and declared; that an account
be taken of all matters concerning the partnership including
the assets and liabilities of the concern and the individual ac-
counts of the partners; that a decree be entered for the sale of
the partnership; and that the defendant be required to discover
the profits and earnings of the copartnership: *Held,* sufficient
on demurrer. (p. 576).

2. AMENDED BILL—*Receiver.*

In such a case, an amended and supplemental bill praying for
a receiver having been filed, where the defendant is in possession
and conducting a successful and prosperous business; who
denies the partnership, and is solvent and able to respond in
damages, the court will not appoint a receiver. (p. 577.)

3. PARTNERSHIP—*Receiver—Misappropriation of Property.*

In a suit to dissolve a partnership and settle its accounts,
where the defendant in possession denies the partnership, a re-
ceiver should not be appointed unless the fact of partnership
is clearly proven in the cause and there is danger of the loss or
misappropriation of the property of the firm or a material part
thereof. (p. 579).

Appeal from Circuit Court, McDowell County.

Bill by J. A. Wood and C. A. Wagner against R. E. Wood.
Decree for plaintiffs, and defendant appeals.

*Reversed.*

W. L. TAYLOR, J. A. STROTHER, WYNDHAM STOKES, R. C. &
B. McCLAUGHERTY and HENRY & GRAHAM, for appellant.

T. L. HEINTZE, RUCKER & KELLER and FLOURNOY, PRICE &
SMITH, for appellees.

McWHORTER, JUDGE:

J. A. Wood and C. A. Wagner filed their bill of complaint in
the circuit court of McDowell County against R. E. Wood alleg-
ing that in the year 1898, through the influence and efforts of
plaintiff, Wagner, a contract was entered into between defend-
ant, R. E. Wood and George F. Lasher and others, trustees, for
the purchase of certain timber on Huff creek in McDowell County

and Wyoming County; that at the time this contract was made and the said Wagner used his influence in obtaining the contract for said R. E. Wood it was agreed between them that said Wagner should have a one-fourth interest in the contemplated business of cutting and marketing the timber; that about this same time one W. M. Ritter purchased from Henry McCormick the timber on a tract of land lying on Sandy Huff, a tributary of Tug river, and which tract contained the only natural and desirable outlet from the Huff creek tract to the railroad and consequently this purchase by Ritter practically blocked the way to the marketing of the timber on Huff creek; that R. E. Wood and W. M. Ritter were rival claimants of the timber on a certain tract of land in McDowell County owned by the McDowell Land Association and claimed by Wood and Ritter respectively by virtue of separate contracts. By settlement between them the interest of Ritter in the timber on Sandy Huff was assigned to Wood, thus giving him an outlet for a large tract of timber on Huff creek; that it was understood that articles of copartnership or an agreement for an incorporation should be prepared and signed by the defendant and plaintiffs providing for the operation of the timber tracts on Sandy Huff and Huff creeks by a copartnership or a corporation to consist of said parties (and in case of corporation to include one A. R. Paddock, who was a friend and business associate of said Wagner) who were to be interested in the following proportion: R. E. Wood and J. A. Wood jointly three-fourths and Wagner one-fourth, and it was understood and agreed between said R. E. Wood and J. A. Wood as to the said three-fourths interest they should own it in equal shares; that no agreement was ever executed in writing but the partnership was agreed upon and went into actual operation and the execution of the written agreement was carelessly delayed from time to time; that said agreement was, that said firm should be known as the "Wood Lumber Company" and was prepared by J. A. Wood at the request of R. E. Wood and although admitted by R. E. Wood to contain all the essential elements of the agreement verbally made, its execution was carelessly delayed. And a copy of said draft was exhibited marked "J. A. W. No. 1;" that they severally paid into the firm fund the following sums of money as their cash contributions to the capital thereof: "By J. A. Wood, three thousand one hundred and fifty dollars; by R. E. Wood, three thousand one hundred

and fifty dollars; by C. A. Wagner, on October 3, 1898, five hundred dollars; by C. A. Wagner, 4th January, 1899, one thousand dollars;" that in addition to such payments, plaintiff furnished credit to the partnership by endorsing the commercial paper of the defendant, R. E. Wood, to the amount of two thousand dollars for the purpose of raising money to conduct the partnership business and assisted in placing the business of the enterprise on a firm financial basis; that until comparatively recently defendant, R. E. Wood, never denied their respective partnership interests but expressly admitted them in various ways, but has recently denied that plaintiffs had any interest in the partnership business or effects and that the money put in the business by them was money loaned him individually and that he now owes it to them individually; that said defendant R. E. Wood had taken upon himself the management and control of the partnership business, had ignored the rights of plaintiffs in the premises, refused them any voice in the management of its concerns, and improperly and illegally appropriated to his own individual use the funds of the partnership to a large amount at different times varying from four thousand dollars to five thousand dollars and that he was indebted to the partnership concern to the amount of four thousand dollars or more; that the earnings of the partnership since its formation had amounted to a very large sum of money; that notwithstanding the great earnings the said Wagner had only been paid six hundred dollars and said J. A. Wood nothing, alleging that plaintiffs were entitled to have a court of equity ascertain and establish their rights, an account ordered and a dissolution of the partnership, and prayed that the defendant be required to answer; the status of the parties, plaintiffs and defendant, be ascertained and settled, a partnership be decreed as existing between them, the interest of each partner be ascertained and declared, an account be taken of all concerned in the partnership including the assets and liabilities of the concern, and the individual accounts of the partners; a decree be entered for the sale of the partnership and R. E. Wood be required to discover the profits and earnings of the partnership. The agreement of partnership in blank filed with the bill as exhibit "J. A. W. No. 1," is dated on the —— day of ————, 1898, and provides, "The style and name of the copartnership shall be Huff Creek Lumber Company; the capital stock of said copartnership shall be

ten thousand dollars and shall be contributed by them as follows," giving the amounts as hereinbefore stated in the bill as paid in by the several parties. The defendant filed his demurrer and answer to said bill, denying that said partnership was ever agreed upon or existed between said parties; admitted that there had been some conversations in regard to a partnership but was never carried into a contract; that plaintiff, Wagner, did let defendant have at two different times in all one thousand five hundred dollars, the larger part of which was furnished by A. R. Paddock; that he was afterwards called on by Paddock and he returned to him six hundred dollars of the money by giving his note at thirty days which was paid at maturity; denies that either J. A. Wood or Wagner ever paid anything into any partnership fund; that respondent never paid Wagner any six hundred dollars from the earnings or otherwise except as it was returned to Paddock as stated; that J. A. Wood never paid anything into any such partnership; denies that he owes them anything except a balance to Wagner on the amount he let respondent have; that plaintiffs never lent their aid nor money in the conduct of the business; that respondent had large contracts for the purchase of timber in which he had individually assumed large liabilities and had deeds for said timber in his own right and had conducted the business in his own name and on his own responsibility; that the contract set up in plaintiffs' bill for a copartnership between them and respondent, if such existed which was denied, was a parol agreement not in writing and was not to be performed within a year from the time the same was alleged to have been made, and not being in writing was void under the statute of frauds, upon which statute respondent relies; and filed with his answer his contracts or deeds for the purchase of large bodies of timber. He also filed with his answer a contract in blank prepared by the attorney of J. A. Wood. On the 17th of December, 1900, plaintiffs filed their general replication to the answer and also filed notice of a motion for an appointment of a receiver in the cause, which motion was set for hearing on the 21st of December. On the 22d of December plaintiffs by leave of court withdrew their replication to the answer and the cause was remanded to rules on motion of plaintiffs, with permission to file an amended bill. Plaintiffs filed their amended bill referring to and making a part of it their original bill and containing additional allegations that defendant had refused to recognize

them as partners and had brought lumber from his works at other places and mixed it with the partnership lumber on the yards at Sandy Huff, and had brought merchandise of his own and placed it in the partnership store mixing it with the merchandise of the firm; and in addition to the prayer of the original bill asked for a receiver to take charge and manage the business of the partnership, which amended bill was sworn to.

The defendant filed his demurrer and answer to said amended and supplemental bills referring to and making part of such answer his original answer, again denying the partnership or that the plaintiffs had any interest in the business carried on by respondent and averring that such lumber and merchandise as were brought by him to the Sandy Huff lumber yards and to the store after the bringing of this suit he kept separate from the lumber already on the yards and from the merchandise in the store or proper invoice thereof.

Plaintiffs took the depositions of C. A. Wagner, A. R. Paddock, J. A. Wood, and T. A. Gaines and renewed their motion for the appointment of a receiver, and filed in support thereof the affidavit of C. D. Heasley, while the defendant filed in opposition to said motion the affidavits of J. H. Yost, William Ducoty, M. N. Offutt, G. L. Wood and the defendant R. E. Wood. And on the 21st day of March, 1901, the cause was heard upon the original and amended bills, the answer of the defendant R. E. Wood to the said bills, upon the said depositions and upon the motion of plaintiffs for the appointment of a receiver, and upon the said several affidavits, when it was agreed by the respective parties that the answer of defendant, Wood, to the original bill should in addition to being treated as an answer be treated and considered as an affidavit on his behalf on said motion for the appointment of a receiver, "upon consideration whereof, the Court being of the opinion that the plaintiffs have shown *prima facie,* the existence of a partnership, between them and the defendant, R. E. Wood, doth sustain said motion for the appointment of a receiver and doth appoint Joseph Keys a receiver in this cause who shall take charge of all the moneys, books, property, and effects of the partnership lumber business on Sandy Huff and Huff Creeks in McDowell and Wyoming Counties referred to in the bills and heretofore run in the name of R. E. Wood, and shall operate the same in the name of Joseph Keys, Receiver, until the further order of this Court, collecting

all accounts now due or hereafter to be come due of R. E. Wood, upon the said business and the said receiver is hereby granted full authority to operate said business and to do all things necessary in connection therewith, to carry out and perform all lawful agreements heretofore made in relation thereto either with the several owners of the timber lands, upon which the said business is being operated, or which any purchase or purchasers, of lumber from the said operation." From which decree the defendant appealed. At the close of said order the record shows "and thereupon, after the said action of the court in appointing the receiver, the plaintiffs ask leave to file and do file their general replication to the answer of the defendant, R. E. Wood, to the original and amended and supplemental bills herein."

Two questions are involved, the first is on the first assignment of error, that the original and amended bills are without the law and equity to support them. It is said by appellant that it is difficult to ascertain from the prayer of the original bill what relief is sought and that if the relief contemplated is for the specific performance of the contract, its allegations are too indefinite and uncertain to be entertained in a court of equity. The bill alleges, it is true in an indefinite manner the particulars of the partnership claimed, but they do allege sufficiently to show an agreed partnership between the three with a capital of ten thousand dollars; and allege "That they severally paid into the firm fund the following sums of money as their cash contributions to the capital thereof, to-wit: By J. A. Wood, three thousand one hundred and fifty dollars; by R. E. Wood, three thousand one hundred and fifty dollars; by C. A. Wagner, on October 3rd, 1898, five hundred dollars; by C. A. Wagner, 4th, Jan'y. 1899, one thousand dollars;" and alleges that said partnership was agreed upon and went into actual operation; and pray that the status of the parties plaintiffs and defendant, be ascertained and settled and that a partnership may be decreed as existing between them, and if found to exist as alleged the interest of each partner be ascertained and declared and an account be taken of all matters concerning the partnership including the assets and liabilities of the concern and the individual accounts of the partners; that a decree be entered for the sale of the partnership, and the defendant required to discover the profits and earnings of the partnership. This can at least be construed into a prayer for the winding up of the partnership, and the further

prayer of the amended and supplemental bill is for the appointment of a receiver. I think the bills are sufficient to give the court jurisdiction; the court by its decree finds that plaintiffs had shown *prima facie* the existence of a partnership between them and the defendant, R. E. Wood, which finding in the state of the pleadings was error as will be shown further on.

The only other question remains as to the legality of the appointment of the receiver. Chapter 133, section 28, Code, provides that, "A court of equity may in any proper case pending therein, in which the property of a corporation, firm or person is involved, and there is danger of the loss or misappropriation of the same or a material part thereof, appoint a special receiver of such property or of the rents, issues and profits thereof, or both, who shall give bond," etc. In Beach on Receivers, s. 588: "It is now settled that, upon an application for a receiver, there must be shown the due existence of a partnership, either by the admission by the defendant, or by other competent proof, as otherwise the sole property of the defendant might be taken from him, his business broken up, while in the end, it might appear that there was no right on the part of the plaintiff even to an account. The burden of proof rests of course upon the plaintiff. If the fact of the actual existence of the partnership be in doubt, and there is no allegation as to the insolvency of the defendant, or of his liability to respond in case of a recovery against him, it seems that a receiver will be refused until a partnership is clearly established. And in such a case the court will direct the issue to be tried at law to determine the fact of partnership and the plaintiff's interest, if any therein." In *Hobart* v. *Ballard,* 31 Iowa 521, it is held: "To entitle one claiming to be a partner to the appointment of a receiver to wind up the affairs of the concern, it must appear that there was a completed partnership, at least so far as to entitle him to a participation in the profits. An agreement of partnership which has not been executed to this extent is not sufficient." Also in *Goulding* v. *Bain,* 4 Sandford (N. Y.) 716: "In a suit for winding up a partnership by one claiming to be a partner but whose right as partner is wholly denied by defendant, and is not clearly established by the affidavits, the court will not grant a receiver nor an injunction; there being no proof that the fund is in danger." *Peacock* v. *Peacock,* 16 Ves. 49; *Fairburn* v. *Pearson,* 2 Mac. & G. 144. In case at bar it is not pretended by plaintiffs that the defendant is

insolvent or is mismanaging the business in any regard but show by their bill and evidence that he is managing it with the highest success and it is clear that if they have any interest in it which can be established, they run no risk of loss by permitting defendant to continue the business, to be compared to the risk which would come to them by the appointment of a receiver, in case they should establish an interest, as claimed by them. A man who has run the business for years with marked success as it is admitted and shown the defendant has is much safer for all concerned to be entrusted with the conduct of the work than a person appointed as receiver who has no personal interest in the success of the enterprise, and one who possibly has little or no experience in the business operated. High on Receivers s. 3 (3rd ed.), says, "Indeed, the appointment of a receiver is regarded as one of the most difficult and embarrassing duties which a court of equity is called upon to perform. It is a peremptory measure, whose effect, temporarily at least, is to deprive of his property a defendant in possession, before a final judgment or decree is reached by the court determining the rights of the parties. It is therefore not to be exercised doubtingly, but the court must be convinced that the relief is needful, and that it is the appropriate means of securing an appropriate end. And since it is a serious interference with the rights of the citizen, without the verdict of a jury and before a regular hearing, it should only be granted for the prevention of manifest wrong and injury. And because it divests the owner of property of its possession before a final hearing, it is regarded as a severe remedy, not to be adopted save in a clear case, and never unless plaintiff would otherwise be in danger of suffering irreparable loss." *Bill* v. *R. R. Co.*, 2 Biss. 390; *Whitehead* v. *Wooten*, 43 Miss. 523; *Oil & Mining Co.* v. *U. S. Petroleum Co.*, 57 Pa. St. 83; *Crawford v. Ross*, 39 Ga. 44; and *Pullan* v. *R. R. Co.*, 4 Biss. 47. And Smith on Receiverships s. 5, after giving the rules governing the appointment of receivers says, "These rules are well nigh universal and it is believed that no case will arise where their recognition will be attended with other than useful results, both to the practitioner and the court. Being founded upon the experience and judgment of a large number of careful and discriminating judges, called upon to administer a difficult branch of remedial jurisprudence, that cannot be otherwise than founded in justice, and a careful and discriminating regard for the rights

and interests of the parties litigant is promoted thereby." The object of section 28, chapter 133, Code, cited, is in harmony with the rules laid down by the courts and text-writers and is for the purpose of preventing loss and injury to property and funds pending litigation, and the appointment of receivers of firm property is for the purpose of saving the property for the benefit of the firm and its creditors, and changing its management from that of a reckless or dishonest managing partner to that of a receiver who will conduct the business in the best manner for the interests of all concerned, but the appointment can be made even then only when the partnership is admitted or proven. The bill alleges in this case that the partnership is denied by the defendant and it is not only fully denied in his answer but in an affidavit in opposition to the appointment of the receiver and to which answer there was no replication. High on Receivers s. 476, says: "It is important to observe, that, as regards the parties themselves, a court of equity will not lend its extraordinary aid by appointing a receiver unless an actual partnership *inter se* be shown to have existed. It is therefore, in all cases, essential to the exercise of the jurisdiction, that there should actually be an existing partnership either admitted by defendant or established by satisfactory proof, since otherwise the individual property of a defendant might be taken from him by a receiver and in the end it might appear that plaintiff had no right. When, therefore, the existence of a partnership is directly in dispute, and is denied by defendant in an action for an accounting, the court will not appoint a receiver *in limine,* especially when there is no allegation of the defendant's insolvency, or of his inability to respond in the event of a recovery against him." *Goulding* v. *Bain,* cited; *Kerr* v. *Potter,* 6 Gill. 404; *Nutting* v. *Colt,* 3 Halst. ch. 539. In *Irwin* v. *Everson,* 95 Ala. 64, it is held: "A receiver will not be appointed, in a suit for the settlement of partnership accounts, if the defendant, having possession of the alleged partnership property, denies the existence of any partnership, is solvent, and is able to answer in damages." Appellees in their brief say, "although the motion for a receiver was pending from January to March the defendant took no depositions nor even gave his own testimony in the cause."

At the time of the hearing of the cause on the motion for a receiver, the pleadings stood upon the bill and amended and

supplemental bills and the answers of the defendant to said bills all of which pleadings were sworn to and the answer used in evidence, and at that time there were no replication to said answer, replication to the original answer having been withdrawn.    In *Bierne* v. *Ray,* 37 W. Va., 571, (Syl. pt. 2), it is held: "Where a cause is brought on even by consent to be heard upon the bill and answer, and there is no replication, the answer is to be taken as true in every part of it, including also the facts stated, which are not responsive to the bill; but a decree will not be reversed for want of a replication, where the defendant has taken depositions, as if there had been a replication." *Jones* v. *Mason,* 5 Ran. 577; Barton's Chancery Practice, page 420, (2d ed.).

There being no replication to defendant's answer there was no issue on it, the replication before entered had been withdrawn by the plaintiffs and not again entered and the answer was to be taken as true in every part including even facts which were not responsive to the bill.    Bart. Chy. Pr. cited.    And in said case of *Jones* v. *Mason,* just mentioned, it is held:  "When a cause is set down for hearing by consent, upon bill and answer, the answer is to be taken to be true."

I have examined the authorities cited and relied upon by appellees touching the appointment of a receiver and find when taken altogether they are not inconsistent with the rules hereinbefore given concerning that matter.    While several things are mentioned in the abstract for the appointment of a receiver, such as "denying the interest of a partner in the business;" "excluding a partner from participation in the management and profits of the business"; "denying him access to the books;" etc., which are all matters for consideration of the Court, yet they must be considered in the light of the facts and circumstances of the particular cause under consideration.    The decree complained of is reversed and the cause remanded.

*Reversed.*