McMAHON v. MEEHAN & LARSON.

(Third Division.  Fairbanks.  August 23, 1904.)

No. 163.

1. MINES AND MINERALS—PARTNERSHIP.
    Where two persons agree in writing to locate mining claims
    in partnership, mines located by one during the continuance of
    the relation become their common property, though located by
    one of the partners in his own name.

    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines
    and Minerals, § 223.]

2. SPECIFIC PERFORMANCE—CONTRACTS.
    Where one party to a contract for a joint venture in locating
    mines in Alaska fails to perform his part of the contract, he
    cannot enforce specific performance against the other.

    [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific
    Performance, § 300.]

3. MINES AND MINERALS—AGENCY.
    An agent who locates a mining claim for and in the name of
    his principal does not acquire an interest in the title thereto
    without an express prior agreement to that effect.

4. SAME—AGENCY—PARTNERSHIP.
    Where the record owner of a placer mining claim engages in
    working it and extracting the gold therefrom on joint expense
    with one who located it for him as his agent, they are mining
    partners in the work and its profits, but not in the title to the
    claim.

    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines
    and Minerals, §§ 222, 223.]

Plaintiff and defendant Meehan, at Nome, Alaska, in 1900
and 1901 engaged in prospecting.   With one Burk they under-
took to sink holes to bed rock on a placer mining claim on
Tissue river, north of Nome, upon an agreement with the
owner that the three should receive one-half of the claim upon
the completion of the work.   Plaintiff paid for two-thirds of
the food supply used on that contract and Burk a third part.

They engaged in other efforts along that line, but unsuccess- · fully. On the 14th day of October, 1901, at Nome, plaintiff and defendant made and signed an agreement in writing as follows:

"This agreement, made the 14th day of October, A. D. 1901, between Michael McMahon and Mat Meehan, both of the town of Nome in the District of Alaska, witnesseth: That the said parties to this agreement hereby form with each other a copartnership and agree with each other to be copartners for the purpose of prospecting, locating, acquiring, and developing mining ground in the District of Alaska, and working and operating the same. Each copartner shall be equally interested in all claims obtained by the other copartner, either by location or purchase; also in all lays or leases or other interest or interests of any kind or description whatsoever. Each copartner shall devote all his time and attention to the business of the copartnership aforesaid. The copartnership shall continue for a term of three (3) years, unless sooner terminated by mutual agreement and division of the property then acquired by the parties above named. Witness the hands and seals of the said parties the day and year first above written.          Michael McMahon. [Seal.]
                                        "Mat Meehan.          [Seal.]
"In the presence of:
    "S. A. Keller,
    "F. E. Fuller."

At the same time and place plaintiff made, signed, and delivered his power of attorney to Meehan, authorizing him to locate mines for him in the District of Alaska. Immediately thereafter plaintiff left the District of Alaska, and did not return until the summer of 1902, when he came to Nome on the steamer St. Paul, and returned on the same trip of the vessel to San Francisco. He remained there until the spring of 1903, when, having received two letters from Meehan, advising him that Meehan had located placer mining claims for him in the Fairbanks mining district, he came into that camp via Dawson and Circle, arriving at Meehan and Larson's camp on Goldstream in April, 1903.

After making the written agreement with McMahon, the defendant Meehan remained in Alaska. During the spring and

summer of 1901 he was emplyed in St. Michael by Capt.
Barnette in building the new steamer Isabelle, and upon her
first voyage up the Yukon came with her as an employé to
Fairbanks. He and Larson had agreed in the mean time to
work together as partners in locating mining claims. Arriv-
ing in the Chena river, and learning of the new strike on
Pedro creek, they procured a small outfit from the captain
for their services on the boat, and left for the mines. To-
gether they located all the claims in dispute in this action, in-
cluding four claims for the plaintiff, McMahon, under the
power of attorney given at Nome on October 14, 1901. Larson
had no notice, knowledge, or information at this time of the
agreement between McMahon and Meehan made at Nome
in 1901.

McMahon did not pay any part of Meehan's expenses in
locating the claims in dispute, nor aid him in any way. He did
not, between the date of the agreement on October 14, 1901,
and April, 1903, devote all or any of his time and attention
to the business of the copartnership mentioned in the agree-
ment, nor aid in any way whatever in acquiring these or any
other mines. The mines in controversy were located and ac-
quired solely through the labors, money, and efforts of Meehan
and Larson.

At the time of making the locations in question, Meehan and
Larson also located claims for Benson, McLeod, Staples, and
Purches; and, in pursuance to a custom which is alleged to
prevail in this district, Meehan and Larson claimed and re-
ceived from each of their principals a one-half interest in all
claims so located by them by power of attorney. They claimed
a one-half interest in the claims so located by them for Mc-
Mahon, and in conjunction with him have worked such claims
since he arrived in the camp in April, 1903.

McMahon filed his agreement with Meehan for record in the
recorder's office at Fairbanks on October 1, 1903, and on June

8, 1904, brought this suit to determine his interest in all the mines so located by Meehan and Larson, claiming a half interest therein by virtue of his contract of October 14, 1901.

N. V. Harlan, David T. Roy, Luther C. Hess, and Edward B. Condon, for plaintiff.

Claypool & Cowles and Bion A. Dodge, for defendants.

WICKERSHAM, District Judge.   In the case of Copper River Min. Co. v. McClellan, p. 134, supra, I had occasion to examine into many of the questions which lie at the foundation of this case.   It is there announced, as a general principle, that if an agent locates land for himself which he ought to locate for his principal he is in equity a trustee for his principal. Included therein is the further well-established principle that if one person, upon agreement with and at the expense of another, locates a claim in his own name, he holds the legal title in trust for the benefit of the party with whom he agreed, and who paid the expenses of the location.   Book v. Justice Min. Co. (C. C.) 58 Fed. 106.   It necessarily follows that where two miners enter into a written agreement to locate mining claims in copartnership, and at a common expense, both agreeing to and devoting their time and attention to the joint effort, mines so located become their common property, though located by one partner in his own name.   The principle in question is based upon the law of contracts, equity enforcing a specific performance of the contract upon the ground that the one located for the common interest, while the other paid the expenses or otherwise aided the common enterprise.   In the case at bar counsel for plaintiff have recognized the correct rule in preparing their bill.   They allege a prior contract and a valid consideration, the location of the mine in pursuance thereto, and demand a judgment for specific performance of the contract.

The testimony clearly establishes the fact of the contract, the location of the mines by Meehan within the period limited in the contract, and his refusal to convey to the plaintiff upon demand. The doubtful question is, was there a consideration upon which to found plaintiff's present demand for specific performance? In a case somewhat like that at bar the United States Circuit Court for the District of Washington held:

"Grub-stake contracts will be enforced by the courts, but only as other contracts; that is to say, it is not enough for parties to assert that they have rights in order to secure legal protection, but they must be able to prove in each case a clear and definite contract, and that by the terms and conditions of such contract, and compliance therewith on their part, rights have become vested." Cisna v. Mallory (C. C.) 84 Fed. 851.

A promise for which there is no consideration cannot be enforced at law. Equity fully adopts the rule that no contract shall be enforced which does not rest on a valuable consideration, and construes and applies it somewhat more rationally and less technically. Parsons on Cont. (7th Ed.) vol. 1, p. 455; vol. 3, p. 314. In the case at bar the plaintiff relies upon the consideration passing from him to Meehan prior to the making of the written contract of October 14, 1901. The evidence in relation to that branch of the case discloses that the greater part of the money paid out by McMahon at that time was invested in a prospecting venture with Meehan and Burk on Tissue river, north of Nome—in sinking holes to bed rock for an interest in a particular claim. The venture there was single, and related to that claim only. Upon failure, that joint effort was closed, and the money spent therein does not seem to be connected in any way with the subsequent written contract. There were other small items of labor, food, and money mentioned in the testimony of both McMahon and Meehan in connection with their joint efforts around Nome; but the evidence is not such as to justify the court in considering them a

sufficient or any consideration to support the present suit for specific performance under the written contract.

Under the written agreement of October 14, 1901, a specific consideration was contracted for between the parties; the contract cannot be supported by proof of any other. To admit such proof and give it such a construction would be to change its terms and plain intent. That agreed consideration is thus plainly stated: "Each copartner shall devote all his time and attention to the business of the copartnership aforesaid." The plaintiff will not now be permitted to insert a prior, doubtful, and different consideration. It is an executory contract, and before he can demand its performance by the defendant he must both allege and prove his payment of the contract consideration. He cannot do this by proof of "a" consideration, but must prove "the" consideration mentioned in the contract.

It is conceded that McMahon did not devote all or any of his time and attention to the business upon which he and Meehan had embarked. He testifies that he left the territory immediately after the making of the contract, and, with the exception of a week, was not in Alaska at any time for nearly two years. During this time the defendant Meehan remained in Alaska, and through his own efforts and at his own expense, and without any aid or attention from the plaintiff, located the mines in dispute. Plaintiff now testifies that he went out to San Francisco because he had the rheumatism. If so, it was without the fault of Meehan, and prevented plaintiff from paying the consideration mentioned in his contract. If admitted, it would not justify the court in excusing payment, and without it compelling the defendant to perform. Equity will not enforce a trust in a mining claim located by an alleged partner under a contract to do so when the claim was in fact not located with partnership capital. Craw v. Wilson (Nev.) 40 Pac. 1076.

Counsel for plaintiff urges that, by his location of certain claims for plaintiff, his recognition of him as a partner, and their joint efforts in working one of plaintiff's claims, the defendant Meehan confirmed and ratified the partnership interest in the property in question. But I do not agree with that contention. It is true that Meehan accepted a power of attorney to locate mines for plaintiff, and he and his partner, Larson, did locate three or four claims in McMahon's name, as they did for other principals. It was clearly shown to the court, however, that in each instance this was done for a half interest in the property. In McMahon's case, Meehan and Larson claimed a half interest in the mines so located by them in McMahon's name as such original locating agents, entered into peaceable possession with McMahon, mined and extracted the gold therefrom, and spent it in their joint efforts to work the claim. If any particular force is to be given to these facts in this case, it must be rather to estop plaintiff than defendant.

For the reason, then, that plaintiff did not devote any part of his time or attention to the business for which he contracted in writing on October 14, 1901, did not perform, in whole or in part, any part of his agreement; and did not pay the consideration, the court will not enforce the specific performance of the contract, and compel defendants to convey the premises in controversy.

## Additional Memorandum.

Counsel cannot agree upon the effect of the former opinion of the court. Defendants first contended that the four locations made by Meehan for McMahon were not within the issues made and tried, and upon that theory a new suit against McMahon was brought, in which Meehan and Larson as plaintiffs claimed a half interest in those claims. McMahon's counsel, on the other hand, insist that the title to these locations is put in issue in this case, and with that contention the court agreed.

Thereupon counsel for Meehan and Larson urged that they did not offer evidence in full on that title, and the court granted them two days in which to make a showing of record by way of an application to reopen the case, and introduce other testimony in support of that title. When the time had expired, their counsel appeared in open court, and neglected to make the showing or application, but contented themselves with the statement that in its former opinion the court found as a fact that the plaintiff and defendants, Meehan and Larson, were actually co-owners or partners in those four claims, and requested the court in its findings of fact to so state and find.

In the former hearing the court gave its attention principally to the question of the rights of the parties under the contract made between McMahon and Meehan on October 14, 1901, at Nome, and held that for want of consideration McMahon had no interest in the claims in controversy located by Meehan and Larson. Only a passing notice was given to the status of the title of the four claims located for McMahon under the power of attorney given by him to Meehan. The court said:

"It is true that Meehan accepted a power of attorney to locate mines for plaintiff, and he and his partner, Larson, did locate three or four claims in McMahon's name, as they did for other principals. It was clearly shown to the court, however, that in each instance this was done for a half interest in the property."

Counsel for defendants, Meehan and Larson, now say that they understood this to be a finding of fact in their favor, but the court had no such intention when the words were written. The court meant that "each instance" mentioned therein referred to locations made for "other principals," and not for McMahon. The next sentence goes on to say that "in McMahon's case, Meehan and Larson claimed a half interest in the mines so located by them in McMahon's name," etc. In short, it was not the intention of the court in writing the paragraph containing the sentences so partly quoted to find that

Meehan and Larson were the owners of a half interest in the four claims so staked in McMahon's name, or that he was, as a matter of law, estopped to deny their title and ownership therein from the fact of a joint effort to work the same.

Where an agent locates a placer mining claim for his principal without any contract to acquire an interest therein, his act inures to the benefit of his principal, and the agent does not thereby acquire a half interest in the title to the claim merely by virtue of making such location as the agent. Where such an agent and the principal thereafter without any contract engage in working such claim, and jointly extract the gold therefrom upon joint expense, they became mining partners in the work of mining, but not in the title to the ground. Under the facts in this case, McMahon was at all times and now is the owner of the four claims so staked for him by Meehan and Larson. He was a mining partner with them in working the ground. Findings of fact, conclusions of law, and a decree will be entered in accordance with the opinions of the court in this case.