# CHARLESTON.

BARTLETT & STANCLIFF *v.* BOYLES.

Submitted June 2, 1909.   Decided November 23, 1909.

1. APPEAL AND ERROR—*Exceptions to Commissioner's Report—Sufficiency.*

   Exceptions to a commissioner's report, which are too general and do not point out the specific items excepted to, or refer the court to the evidence relied on in support thereof, will not be considered on appeal to this Court.   (p. 329).

2. MINES AND MINERALS—*Partnership—Management by Majority.*

   The members of a mining partnership not agreeing, those having the majority interest have the right to control the management in all things necessary and proper for its operations, and are liable in an accounting only for culpable negligence, or breach of duty, or wrongful conduct, or diversion of the property from the business of the firm.   (p. 329).

3. APPEAL AND ERROR—*Review—Non-action by Court—Decisions Reviewable—Refusal to Appoint Receiver.*

   Though, in a suit to dissolve, settle and wind up the business of a mining partnership, a special receiver be prayed for, and a proper case be presented therefor, yet if neither party has moved the court to appoint a receiver, and there has been no decree appointing or refusing to appoint, no error is presented reviewable here on appeal; and no appeal lies to this Court from an order or decree refusing to appoint a receiver.   (p. 330).

4. MINES AND MINERALS—*Mining Partnership—Dissolution—Settlement Between Partners.*

   Where, in a suit for that purpose, a dissolution, accounting and winding up of a mining partnership has been decreed, it is error on a partial settlement for the court to give a personal decree against one partner in favor of another for a balance found due him on such partial settlement. The social property should be first reduced to money and applied to discharge partnership liabilities, including any balance found due on final settlement from one partner to another, and then a decree over on final settlement for any balance that may remain.   (p. 331).

66 W. Va.

5.   SAME—*Mining Partnership—Advancements by One Partner to Another.*

Where one member of a mining partnership has advanced money or property to pay the share of another in the operating expenses, he is entitled to interest thereon, as against the delinquent partner, on dissolution and final settlement and winding up of the partnership.   (p. 334).

Appeal from Circuit Court, Pleasants County.

Bill by Bartlett & Stancliff, a partnership, against Samuel Boyles.   Decree for complainants, and defendant appeals.

*Reversed in part.   Affirmed in part.*

*J. C. Noland,* for appellant.

*Thos. P. Jacobs, Allen G. Swiger,* and *J. H. McCoy,* for appellees.

MILLER, PRESIDENT:

This is a suit by Bartlett and Stancliff, a co-partnership, and Bartlett individually, against Boyles, for a dissolution, accounting and winding up of a mining partnership.   Upon bill, answer and report of the commissioner, to whom the cause was referred to take and state an account between the partners, and numerous exceptions thereto by Boyles, overruled, except the sixth, sustained, and in accordance with said report, it was adjudged that Boyles should pay Bartlett, assignee of Bartlett and Stancliff, $502.32, with interest from July 15, 1902, until paid, being Boyles' share of the operating expenses from March 9, 1901, to July 15, 1902, the date Bartlett purchesed the interest of Stancliff; and the further sum of $753.85, with interest from September 15, 1904, until paid, being Boyles' share of the operating expenses from July 15, 1902 to September 15, 1904; and that said mining partnership, in which Bartlett owned the undivided seven eighths, and the said Boyles the undivided one eighth, be dissolved, the property sold, the business wound up, and that there be a proper distribution of the proceeds of the sale of the property among the partners.   And the decree appointed commissioners to make the sale of the property for the purposes aforesaid.

The bill, tested by *Childers* v. *Neely,* 47 W. Va. 70, and *Blackmarr* v. *Williamson,* 57 W. Va. 249, challenged by de-

murrer, appears to be well founded in law, and to be supported by the evidence, entitling plaintiffs to a dissolution and an accounting upon the principles of those cases.

Twenty two exceptions were interposed by defendant to the commissioner's report. Defendant's exception number six, involving also the ninth, was that the commissioner, after the testimony had been completed, without notice or opportunity for cross examination, permitted Bartlett to file an *ex parte* statement of his account for operating expenses from September 15, 1904 to April 15, 1905, and had reported thereon a balance due from Boyles to Bartlett of $266.56. Upon sustaining said exception the court by said decree recommitted the cause to the commissioner and directed him to state and settle the accounts between the partners from September 15, 1904 to the date of making up his report. The latter action of the court is assigned as error.

The first, second, fourth, fifth, seventh and eighth exceptions are too general in their nature and fail to point out any particular item or items in the account as erroneously charged, or to direct the attention of the court to any evidence in support thereof. It is a sufficient response to these exceptions to say that this Court will not undertake to revise the report of a commissioner, and review the decree of the lower court thereon upon any such general exceptions. It is the duty of counsel, if they rely upon exceptions, to make them specific, and to call attention to the specific evidence supporting them, otherwise they will not be noticed here. *Poling* v. *Huffman,* 48 W. Va. 639.

Exceptions ten to twenty one, inclusive, relate to particular disbursements by and particular acts of Bartlett in the management of the property. They present the questions whether such managing partner, owning the controlling interest, can bind the partnership for money expended for office rent and book-keeping; to change before drilling the location of a well previously agreed on to a new location; can abandon a well producing gas, when in his judgment the production is insufficient to justify maintaining the same and there is no immediate market therefor; can dispose of surplus casing, rigs, boilers and other personal property, not needed for present purposes, to another co-partnership in which he is interested, accounting to

the partnership for the value thereof, and without thereafter being chargeable with rent for such property as the property of the partnership; and the right of such managing partner to bind the partnership for money expended in buying a right of way for water lines and pipe lines. The general rule applicable alike to all these questions is, that, the members of a mining partnership not agreeing, those having the majority interest control its management in all things necessary and proper for its operation, rendering themselves personally accountable, in an accounting between the partners, for any culpable negligence or breach of duty, or wrongful conduct, or diversion of the property from the firm's business to other business in which such managing partner may be interested. *Childers* v. *Neely, supra;* Thornton on Oil and Gas, section 322; Barringer and Adams on Mines and Mining, 750; 22 Am. & Eng. Ency. Law, 229. The proper management of such mining partnership, as of any other business, necessarily requires the exercise of discretion and judgment; and, within the limited powers of such a partnership, exercising good faith, and having due regard to the relationship of trust and confidence between him and his co-partners, the managing partner has full power to do whatever may be necessary and proper in carrying on the business, and control of the work for the benefit of all concerned. The commissioner reported in favor of the appellees on all the matters covered by these exceptions, and the court below, as shown, upon a careful consideration of all matters covered thereby, overruled the exceptions and confirmed the report. We have been referred to no evidence, nor to any principle of law justifying interference by us with the decree below respecting any of the matters covered by these exceptions.

Other questions are presented: First, it is earnestly insisted that it was error not to have appointed a special receiver of the partnership property, to have charge and management thereof pending the litigation. It was decided, in *Childers* v. *Neely, supra,* that cause being shown for a dissolution of the partnership, and the members are discordant and ill willed, and the partnership hopeless of prosperity, and dissolution necessary, a receiver or manager should be appointed, and the business and assets not left wholly in the control of one member to the exclusion of another. But it was certainly not intended by this

holding that the court, unmoved by either of the parties, should appoint such receiver. True, in this case the plaintiff prayed for a receiver, and the defendant in his answer requested it, if the court should determine a proper case was presented for dissolution; but neither party moved the court to appoint a receiver, and there was no order or decree thereon. We are only empowered on appeal to review judgments or decrees of the lower court. If there has been no judgment or decree, we have no power by appeal to move the court to action. This Court will not consider questions not yet acted on by the circuit court. 1 Ency. Dig. Va. & W. Va. Rep. 539, and cases cited. The statute, section 4038, Code 1906, gives no appeal from a decree or order refusing to appoint a receiver. We get our authority to review a decree appointing a receiver from the seventh clause of that section, giving right of appeal where, by the decree, possession or title of property is to be changed. What was decided in *Childers* v. *Neely,* therefore, was not that an appeal would lie from an order or decree refusing to appoint a receiver, but what principles should govern in administering a mining partnership when dissolution is decreed. In the dissolution and winding up of the affairs of an ordinary co-partnership, it is generally within the sound discretion of the court, either before or after dissolution, to appoint a receiver of the partnership property. 2 Bates on Partnership, sections 993-995; *Wood* v. *Wood,* 50 W. Va. 570. This rule applies also in the appointment of a receiver of property other than partnership property. *Robrecht* v. *Robrecht,* 46 W. Va. 738, 743. And also in the case of mining property, or mining partnership, or property involved in a joint adventure. Alderson on Receivers, pages 112, 586; *Galloway* v. *Campbell,* 142 Ind. 324. In case of abuse of the discretion of the court in refusing to appoint a receiver, the remedy would not be by appeal, but, as suggested in *Robrecht* v. *Robrecht, supra,* 743, upon the authority of a Michigan case, there may be another remedy, but it is not by appeal.

Three other questions are presented by assignments of error, more or less involved in each other, namely: First, whether, dissolution and winding up of the affairs of the co-partnership being decreed, it was proper, upon the partial settlement before the commissioner, to give personal decrees against defendant for

balances found in favor of the appellees. Second, whether it was proper, in advance of a complete and final settlement of the accounts of the co-partnership, to decree a sale of the property. And, third, whether in the then status of the case, it was proper to have recommited the cause to the commissioner to state and settle the account down to the date of his report. It is claimed by appellant that the court below erred in all these particulars. It becomes necessary, therefore, first to determine by what rules and principles the court should be governed in the dissolution and winding up of a mining partnership. It is said in 22 Am. & Eng. Ency. Law, 229: "In the absence of articles, mining partnerships are governed by the law of ordinary partnerships except so far as general usage or the practice of a particular company has established a different rule, and except as modified by the absence of the *delectus personarum*". And at page 232: "The same equitable rules are applied to the winding up of mining partnerships as obtain in cases of ordinary partnerships. Equity has jurisdiction of a suit to dissolve and settle the affairs of a mining partnership and to sever the interests of the several partners." To the same effect is Thornton on Oil and Gas, 349. In *McIntosh* v. *Perkins*, 13 Mont. 143, cited in a note, the appointment of a receiver was refused on general equitable principles. And this was the law announced and applied in *Childers* v. *Neely, supra.*

Was it proper, then, within the rules governing ordinary partnerships, for the court below, on the partial settlement, to have given personal decrees against appellant in favor of the appellees for balances found against him on such partial settlements? In *Childers* v. *Neely, supra,* it was decided that: "Partners have a lien on a social property for advances or balance due them, after debts; but if they have divided the property or product of the business, giving each his share in severalty, and separating it from the balance, no such lien exists on the property or product so actually divided. Such is the case with 'division orders' in oil mining." And the sixth point of the syllabus in that case is: "If a bill is filed by a member of a co-partnership for dissolution and account, and cause is shown for dissolution, there should be a decree of dissolution and full account, not one allowing the partnership to continue its business, and making only a partial account, and

decreeing on its basis in favor of one against another member for a balance on such partial account, leaving assets untouched by the account." This law would seem to control the present question. Such, also, is the law respecting general partnerships. In *Moore* v. *Wheeler*, 10 W. Va. 35, a suit to dissolve and wind up a general partnership, it is decided to be error to decree in favor of one partner against another for money on a bill to settle and dissolve a partnership without first applying properly the partnership assets. In the opinion of the Court in that case, at page 46, it is said: "Without attempting to lay down any general rule as to the selling of the joint personal property of a co-partnership, it seems to me, under the circumstances of this case, as shown by the record, the court below erred in giving a personal decree against the defendant in favor of the plaintiff for money, as was done in this case, at the time it was done. The court should have informed itself, by some proper mode, before making such a decree, as to whether said debt or judgment against the Chesapeake & Ohio Railroad Company was available, or would be in a reasonable time, and if so available, to have caused it to have been collected by a receiver, and the proceeds, so far as necessary, to be applied to what is or may be due the plaintiff from the defendant, if anything, on the settlement of the partnership account. And also the court should have caused a receiver to have sold said timber, and applied the proceeds thereof in the same manner." In 2 Bates on Partnership, section 971, it is said: "No personal decree is to be rendered against individual partners until the assets have been converted into money, that is to say, the excess of receipts by a partner over his disbursements is not to be ordered paid in by him to the receiver before the assets have been exhausted, but is a mere item to be debited to him on the final balance; nor where all the debts have been paid, except what is owing from one partner to the other, should this be ordered paid until the assets are collected; that is, the creditor partner is to be paid out of the proceeds of assets as far as possible." According to these authorities, therefore, it was error for the court, before reducing the partnership assets and applying them to the discharge of the plaintiffs indebtedness, to have given decrees against appellant. Whether a managing partner would have right of personal action against his co-partner for his share of

advancements   made for operating the   partnership   property,
where no dissolution or winding up of the partnership business
is sought or decreed, we need not decide and .do not decide;
but we do decide that, where dissolution and winding up of the
business is justified and decreed, before there can be any decree
in favor of the managing partner against a co-partner, the part-
nership property, if it can be in a reasonable time, must be
first reduced, and the partner's interest therein be first applied
in payment of any balance due from him on settlement.

The above law seems to us to answer also the second and
third questions, and to justify the decree of the court below
in directing a sale of the property and recommitting the
cause to the commissioner for final settlement.   The court
might have awaited recommitting the cause to the commissioner
for a final report of the commissioner to make the report and
confirmation of the sale of the property before recommitting
the cause to the commissioner for final report, and final ac-
counting, after application of the assets to the discharge of all
partnership liabilities, including the liability of the defendant
to the appellees.   But, as the final report of the commissioner,
may be controlled by the court, we see no error in the decree
justifying reversal on that ground.

The only other points made against the report and decree is
that interest was decreed against appellant upon the balances
found against him, from the dates with reference to which the
balances were struck; and that if interest was chargeable before
final settlement of the partnership, the decrees should have been
for the aggregates of principal and interest due at the date there-
of, as provided by section 3986, Code 1906.   If the decrees
against appellant had been proper, though not strictly in con-
formity with said section, he would not have been prejudiced
thereby; the error, if any, would have been in his favor, not
justifying reversal.

But what is the law respecting interest on the dissolution
and settlement of a partnership?   It is contended by appellant
that interest can be decreed only on the balance found against
him on final settlement, after application of his share of the
social assets to his liabilities, and that interest can not be
properly included in such settlement on advancements made
by his co-partners for his share of the operating expenses.   The

rule applicable to general partnerships is that a partner is not entitled to interest on capital which he contributes to the firm, although his contribution be greatly in excess of that of his co-partners, unless they. have agreed that he may have interest. 30 Cyc. 698. But it is said by the same authority, on the following page, that, when a partner makes an advance or loan to his firm for partnership purposes, it seems fair that he should receive interest thereon. In 2 Bates on Partnership, section 786, after laying down in previous sections the general rules respecting interest, says: "It has been not infrequently said that there is no rule as to charging or allowing interest in settling partnerships, but that each case must stand on its own circumstances." In section 785, this writer says: "Advances or loans to the partnership are not like capital, but like borrowing from a third person, and interest is allowed on them."

What are the controlling facts in this case? The oil produced was divided in the pipe lines; each partner getting his share of the oil, and disposing of it; there was no other source of revenue out of which the operating expenses could be paid, and the implied, if not the express, agreement, was that each should contribute and pay to the managing partner his share of the operating expenses. As found by the commissioner, and decreed by the court, the appellant had not done this, but that the managing partners had paid the whole expense. This amounted in legal effect to an advancement for appellant, for he admits by his answer that he contributed nothing towards defraying the expenses of operation subsequent to March 9, 1901. We are of opinion, therefore, that the appellant was justly chargeable with interest on the amounts advanced for his account.

The decree below must be reversed, however, so far as it gives personal decrees against the appellant in favor of the appellees. In all other respects it will be affirmed, with costs to the appellant in this Court.

*Reversed in part.   Affirmed in part.*