Hurlbut, J.,
rendered the opinion of the court.
On July 27, 1909, plaintiffs (defendants in errcr) instituted this action against E. W: Pritchard and one Fred-Lamont, defendants, praying for the specific performance of a contract. For convenience we will herein refer to the parties as plaintiffs and defendants, as they appear in the original complaint.
A supplemental complaint was filed, from which it appears that on August 1, 1906, a written contract, designated as “Title Bond and Lease of Mining Property,” was entered into between plaintiffs on one part and defendants on the other, by the terms of which defendants agreed to sell certain *349 mining premises to plaintiffs and Lamont for the sum of $5,000, and execute deed therefor at any time on or before the first day of August, 1909, upon payment to them, or deposit to their credit in the Colorado National Bank of Denver, of the sum of $5,000. The lease gave plaintiffs and Lamont right to full possession of the mining claims, and to mine the same and remove therefrom the ores, upon an agreed royalty of ten per cent, of the net value thereof. It further appears from the amended complaint that on or about August 1, 1906, plaintiffs and Lamont took possession of the mining claims, and began to develop and operate the same as lessees, continued such work up to the latter part of November, 1907, and expended a substantial sum of money in so', doing; that at the time last mentioned Lamont ceased working the mines; that after Lamont ceased to work the mines as aforesaid, plaintiffs continued further development and exploration, and expended in so doing the sum of $2,600; that Lamont ceased to work the mines at the time aforesaid because of a dispute or disagreement between himself and plaintiffs as to the method and manner in which the work should be prosecuted ; that within the time fixed by the agreement plaintiffs tendered to' defendants the sum of $5,000, and demanded a deed for the mining claims from defendants to themselves and said Lamont; and that Pritchard was ready and willing, and offered, to make such deed, in pursuance of the tender, but Lamont refused to do so.
To the amended complaint defendant Lamont filed an a'nswer and cross-complaint, admitting that he ceased to work at the mines in November, 1907, as stated in the amended complaint; also' making other admissions and denials, which are not necessary to further notice.
Trial was had to the court, which found the issues in favor of plaintiffs, and in the decree adjudged Lamont to execute and deliver a deed to plaintiffs for a one-sixth interest in the mining claims; also adjudged him to- be indebted to plaintiffs for one-third of the $2,600 which represented the *350 expense incurred in working and developing the mines, by plaintiffs, after November, 1907, and after Lamont had ceased working the same, as stated.
There is no bill of exceptions in the record, although it is evident therefrom that more or less testimony was introduced at the trial. If the record proper fails to disclose reversible error in the proceedings below, the decree appealed from should be conclusively presumed to be founded upon ample evidence to sustain it, and ought not to be disturbed. The absence of a bill of exceptions leaves for the consideration of the court only the record proper, which consists of the pleadings, motions, and orders, findings and decree of .the court.
We will first direct our attention to' the amended complaint. It is there alleged that,
“The relations between plaintiffs and defendant Fred Lamont became strained and unpleasant in consequence of such differences (meaning failure. fi> agree about the proper method of working the mines) and others of a like character, and at the end of November, A. D. 1907, the said defendant Fred Lamont ceased to work at said mines.”
The part of the quotation, viz., “at the end of November, A. D. 1907, the said defendant Fred Lamont ceased to work at said mines,” taken with other allegations of the complaint, shows beyond question that Lamont then and there severed all relations with plaintiffs as a co-lessee with them in operating the mining premises under the lease agreement, and then determined to withdraw, and did withdraw, from the venture, as a co-lessee with them under such agreement, and thereby surrendered all interest he may have had as such co-lessee. No other interpretation can be reasonably placed upon the language quoted.
It may be well at this time to fix the status of plaintiffs and Lamont, so far as concerns their working of the mines under the agreement.
*351 In Manville v. Parks et al., 7 Colo. 128, 2 Pac. 212, it is said:
“In Charles v. Eschelman, 5 Colo. 106, it is said that ‘A mining partnership is held to exist where the several owners of a mine co-operate in the working of the mine,’ and the court then proceeds to point out some of the differences between a mining partnership and an ordinary trading partnership; but we apprehend that this language of the court, while applicable to the case before- it, was not intended to restrict the definition of such- partnerships solely to cases where a mine is owned by the parties working it, for it is evident that a mining partnership may exist as well where the parties have an interest merely in 'the working of a mine, or in carrying on mining operations, as where they own the mine itself. * * * Upon the contract with the owner of the mine, the defendants had an option of the property, in which the respective interests of each were defined and understood, while the working of the mine was for their joint benefit and profit, establishing such a community of interest in the adventure as.constitutes a mining partnership.”
To the same effect: Meagher et al. v. Reed, 14 Colo. 335, 24 Pac. 681, 9 L. R. A. 455; Ashenfelter v. Williams, 7 Colo. App. 332, 43 Pac. 664; Hodgson v. Fowler, 24 Colo. 278, 50 Pac. 1034; Lyman et al. v. Schwartz, 13 Colo. App. 318, 57 Fac. 735. From Meagher et al. v. Reed, supra, we quote as follows:
“It is undoubtedly a general rule that when two or more persons acquire mining property solely or principally for the purpose of extracting the ores, in the absence of an express intention to enter into a general commercial partnership, in the conduct of their mining operations, the relation existing between them in the transaction of their common business is a mining partnership, and not a general partnership-. 1 Bates, Partn. § 163.”
There is no direct allegation in the complaint that a partnership existed between the plaintiffs and Lamont", and no *352 allegation from which a partnership can be inferred, except the allegation that after the execution of the lease and actual possession of the mining property taken thereunder, plaintiffs and Lamont “agreed that all three of them should and would work, mine and operate the same under and in pursuance of said lease and agreement,” and that thereafter they did so operate the mines until November, 1907, at which time, the complaint alleges, because of certain irreconcilable differences between the plaintiffs and Lamont as to the operation of the mines, the relations between plaintiffs and Lamont became SO' strained and unpleasant “that the said defendant Fred Lamont ceased to work at said mines; that plaintiffs continued to mine and operate the same under said lease and agreement for the joint interests of plaintiffs and defendant Fred Lamont.”
It is plain that the only partnership implied from said allegations is that relation known under the laws of this state as a mining partnership, in its narrowest and most technical sense. The lease referred to is absolutely barren of any of the usual provisions of mining leases relative to .the character or amount of work to be done, and does not aid the other allegations of the complaint in that respect; consequently, under the well recognized law, the mining copartnership existed by virtue of the joint operation of the mines, and terminated, so far as Lamont is concerned, when he ceased to work the mines; and thereafter, without an agreement, plaintiffs had no authority to operate them in his behalf or at his expense or make him liable for any cost or expenses of so operating them. There was no express agreement alleged, and nothing in the pleadings from which his consent to> operate thereafter at his expense can be implied. Under these conditions of the .pleadings, there is nothing upon which evidence was admissible to fix a liability upon Lamont for the expenses incurred by the plaintiffs after Lamont’s withdrawal from the partnership. The judgment fixing such liability was not authorized by the allegations of the complaint under *353 any condition of proof. The record proper disclosed error, and it was not incumbent upon him to bring up the evidence by bill of exceptions. He is entitled to a reversal on the record brought here.
In the absence of a contract forbidding it, a member of a mining partnership may at any time withdraw therefrom, or sell his interest to any one he desires, without dissolving the partnership', except as to himself.
In Meagher v. Reed, supra, the following was cited with approval, from Collier on Mines, page 89:
“It was decided, after many doubts, that the mining partner had a right either to relinquish ór transfer his share without the consent of his co-partners.”
Our own appellate courts have repeatedly recognized and followed the rule stated by Mr. Collier. Lamont’s withdrawal from the co-partnership by ceasing to work the mines as a co-lessee with plaintiffs, left plaintiffs free, without let or hindrance from Lamont, to work and explore the mines for valuable ores and minerals during'the full term of the lease and bond. After such withdrawal, Lamont could not have had any claim upon plaintiffs for any profits they might have realized from ores extracted after that time, and there appears to be no good reason why he should be charged with any part of the expenses incurred by plaintiffs after that time. It will be remembered that the above quotation from the amended complaint is the sworn statement of plaintiffs themselves. It is not denied by defendants, and the statement therein that he ceased to- work at the mines on the date given is conclusive against plaintiffs.
Counsel have discussed in their briefs a number of other questions, to which we have given consideration, but deem it unnecessary to make further reference to the same, as we discover no reversible error in the rulings and proceedings of the trial court of which complaint is made.
As the pleadings stand, and with the presumption indulged as to the evidence, there appears to be noi good reason *354 why Lamont, after the tender, should have refused to execute and deliver the deed to plaintiffs for a one-sixth interest in the two mining claims, as he clearly bound himself to do in the bond and lease. By so doing he would have substantially performed the conditions thereof on his part, and avoided the anomalous act of deeding his own property to himself, which would have been the- case had he complied literally with such conditions.
The judgment is reversed, with instructions to the District Court to enter a decree against Lamont, adjudging him ^o .make, execute, acknowledge and deliver to plaintiffs, or any one they may designate, a good and sufficient deed for an undivided one-sixth interest in and to the two claims described in the lease and bond agreement, upon payment to him of the sum of $833.33; and that Lamont be adjudged to pay the costs.'
We are authorized to- say that Presiding Judge Cunningham concurs in this opinion, so far as it affirms the judgment, but thinks the judgment below should be affirmed in to to.

Reversed with instructions.