THE HON. HENRY L. MYERS,
THE HON. ALBERT P. STARK,
THE HON. JOHN A. MATTHEWS,
THE HON. ALBERT J. GALEN,
} Associate Justices.

---

STATE EX REL. COLE, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 6,113.)

(Submitted March 14, 1927. Decided April 2, 1927.)

[254 Pac. 863.]

*Supervisory Control — Mining Partnership — Definition — Majority Rule Controls — Claim and Delivery.*

Mining Partnership—Definition.
    1. A mining partnership, within the meaning of section 8050, Revised Codes of 1921, exists when two or more persons are engaged in working a mining claim, whether as owners or lessees, and extracting mineral therefrom, the relationship, in the absence of an agreement to form such a partnership, being created by law upon the doing of the two things mentioned.

---

1. See 18 R. C. L. 1200.

Same—Majority Rule Controls Affairs.

2. Under section 8059, Revised Codes, the action of the members of a mining partnership owning a majority of the shares or interests therein binds the partnership in the conduct of its business, and such majority may do all things proper to its operations, take the necessary steps to preserve the partnership property, and select counsel for it.

Same — Claim and Delivery — Partners Owning Majority Interest may Bring Action.

3. On application for writ of supervisory control to review an order of the district court overruling the motion of one of three equal mining partners to dismiss him as plaintiff in an action in claim and delivery commenced by his copartners in the names of all three and on behalf of the partnership against a sheriff to recover mining tools and appliances attached in an action against the third partner (relator), *held* that the two partners owning a majority interest had the right to bring the action as they did (see par. 2, above) without the consent of the third.

Same—One Partner cannot Sue Copartner in Claim and Delivery.

4. A partner cannot sue his copartner in an action in claim and delivery to recover any of the firm property; hence the contention of one of three equal mining partners that he, being opposed to the commencement of such an action by his copartners, should have been made a defendant in such action, has no merit.

Same—Majority Rule not Open to Objection as Depriving Nonconsenting Partner of Liberty of Action.

5. One is entitled to such liberty only as the law allows, and where he becomes a partner in a (mining) partnership he voluntarily surrenders a certain part of his individual liberty in matters pertaining to its affairs and may therefore not complain that by upholding the majority rule he is deprived of his liberty.

Supervisory Control—Purpose of Writ.

6. The writ of supervisory control is authorized to prevent a failure of justice, by supplying a means for the correction of manifest error.

[1]   Acquire, 1 **C. J.,** p. 908, n. 33. Mines and Minerals, 40 **C. J.,** sec. 797, p. 1144, n. 85; sec. 798, p. 1145, n. 94, 5.

[2]   Mines and Minerals, 40 **C. J.,** sec. 803. p. 1149, n. 55, 57 New.

[3]   Mines and Minerals, 40 **C. J.,** sec. 803, p. 1149, n. 57 New.

[4]   Partnership, 30 **Cyc.,** p. 461, n. 29, p. 462, n. 32, 33, p. 567, n. 45 New.

[5]   Mines and Minerals, 40 **C. J.,** sec. 803, p. 1149, n. 57 New. Witnesses, 40 **Cyc.,** p. 2288, n. 15 New.

[6]   Courts, 15 **C. J.,** sec. 521, p. 1094, n. 86.

Original application by the State, on the relation of John H. Cole, for a writ of supervisory control directed to the District Court of the Third Judicial District in and for Granite County, and George B. Winston, Judge of said court, to annul and set aside an order overruling relator's motion, to be dis-

4.   See 20 **R. C. L.** 924.

missed as plaintiff in an action by a mining partnership of which he was a member. Proceeding dismissed.

*Mr. N. A. Rotering,* for Relator, submitted a brief and argued the cause orally.

*Mr. D. M. Durfee* and *Mr. S. P. Wilson,* for Respondents, submitted a brief; *Mr. Wilson* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an original proceeding; application for writ of supervisory control.

It appears that Humphrey Courtney, Maurice Courtney and John H. Cole, the relator, all of Granite county, obtained a lease of a certain mining claim in that county and engaged in mining it. It is admitted that, thereupon, there was formed a partnership, which still exists. It is contended by the two first named that it is a mining partnership; by the latter, that it is a general partnership.

Florence Cole Petritz, a sister of relator, sued him, in the district court, in Silver Bow county, for money loaned, in the sum of $5,600, and attached his interest in a lot of personal property in Granite county, the tools and appliances used by the partnership in its mining operations. The sheriff took manual possession of all of such personal property, in its entirety. Thereupon, in the names of Humphrey Courtney, Maurice Courtney and John H. Cole, a mining partnership, doing business under the name and style of Courtney Bros. & Co., plaintiffs, (John H. Cole being the relator herein) the two Courtneys instituted a replevin action in the district court, in Granite county, against the sheriff, for the recovery of all of such personal property, alleging that the plaintiffs owned it and were entitled to the possession thereof and that it was not seized under an execution or attachment against the property of the plaintiffs. The complaint was verified by one of the

4    State ex rel. Cole *v.* District Court et al.    [Mar. T. '27

[79 Mont. 1.]

Courtneys. They gave a replevin bond. The coroner took the property and delivered it to them and they have it.

Thereafter, in that action, Cole, the relator herein, served and filed a motion for an order dismissing him as a plaintiff in the action. He accompanied it with his affidavit, declaring that the action was instituted without his knowledge or consent and against his wishes; that he is opposed to the prosecution thereof and wishes to be dismissed as a plaintiff; also, that the partnership composed of the plaintiffs is a general partnership. A hearing on the motion was had. At the hearing, Cole testified in support of his motion. Some documentary evidence was introduced. There was no counter evidence. The district court overruled the motion.

Relator then petitioned this court for a writ of supervisory control, directed to the district court and the judge thereof, respondents herein, to the end that the order of the district court, overruling his motion, be annulled and set aside and that the district court be compelled to take favorable action on his motion. In support of his petition, relator assigns as grounds therefor his contentions that the district court, in overruling his motion, acted without authority and in an arbitrary manner; that relator has no plain, speedy or adequate remedy by appeal; that relator thereby will suffer great and irreparable injury; and various other grounds of kindred nature. Upon the filing and presentation of the petition, an order to show cause was issued and served. Respondents appeared and moved to quash the petition. The motion to quash was argued and submitted.

So far as disclosed by the record before us, we hold the [1] partnership in question is a mining partnership. Section 8050, Revised Codes, 1921, provides: "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same."

According to the terms of the written lease of the mining claim, set forth in the record, that is just what the lessees

undertook to do.  According to the testimony of the relator, that is just what they did.  They actually engaged in working the mining claim, by extracting therefrom the mineral.  Of that, there can be no doubt.  The partnership continues and the work continues.

Counsel for relator, in contending that the partnership is not a mining partnership, cite *Anaconda Copper Min. Co.* v. *Butte & Boston Min. Co.*, 17 Mont. 519, 43 Pac. 924.  The facts in that case are very different from those here presented.  In that case the opinion says "the plaintiff and defendant were not actually engaged in working the mine."  There is nothing disclosed in that case to show that the plaintiff and defendant ever did engage in working the mine.  Here, it is admitted the lessees worked it.  In that case, the court points out that the plaintiff and defendant were joint owners of the property, the one owning an undivided three-fourths and the other, an undivided one-fourth.  The court further points out that, under the statute, the same then as now, two things are requisite to a mining partnership: (1) That two or more persons shall own or acquire a mining claim for the purpose of working it and extracting therefrom the mineral; (2) that they actually engage in working the mine.  The opinion states that, while the first requirement existed, the second did not.  Hence, that case is not applicable.  However, in the partnership here considered, the record plainly shows that both requirements exist.  Counsel for relator cite also *Congdon* v. *Olds*, 18 Mont. 487, 46 Pac. 261.  Neither is that case applicable.  There is in it nothing whatever to sustain the contention that this partnership is not a mining partnership.

Section 8051, Revised Codes, 1921, provides: "An express agreement to become partners or to share the profits and losses of mining is not necessary to the formation and existence of a mining partnership.  The relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the minerals therefrom."

Section 8052, Revised Codes, 1921, provides: "A member of a mining partnership shares in the profits and losses thereof in the proportion which the interest or share he owns in the mine bears to the whole partnership capital or whole number of shares."

The provisions of those sections fit the testimony of the relator. He testified there was no particular agreement, in regard to the mining operations, between him and the Courtneys, except that they would get the lease and each would be equally interested in it and they would expend about $5,000 in the mining operations and would share equally losses and profits; there was a sort of implied understanding that, if the lease could be obtained, it would be taken by the three of them and they would carry on mining operations on the leased property; they got the lease and did so; there was no express agreement of partnership. Having conformed to the requirements of law, the law formed the partnership. The law says when certain things are done a mining partnership results. They did the things required. However, people may expressly agree to form a mining partnership. (*Skillman* v. *Lachman,* 23 Cal. 198, 83 Am. Dec. 96; *Loy* v. *Alston,* 172 Fed. 90.) In this case, even though there may have been an agreement, express or implied, of partnership or an intention to form a partnership, that does not keep it necessarily from being a mining partnership.

The fact that the mining claim, in this instance, was merely leased does not prevent a mining partnership as a result of law. The partners do not have to own the claim. They have to own only a possessory right. That may be acquired by lease. Our statute says "own or acquire." (Sec. 8050, supra.) That shows that "own" and "acquire," in the statute, have different meanings. Lessees, as well as owners, may be mining partners. (*Howard* v. *Luce,* 171 Fed. 584; *McMahon* v. *Meehan & Larson,* 2 Alaska, 278; *Lamont* v. *Reynolds,* 26 Colo. App. 347, 144 Pac. 1131; *Walker* v. *Bruce,* 44 Colo. 109, 97 Pac. 250; *Manville* v. *Parks,* 7 Colo. 128, 2 Pac. 212; *Jarecki Mfg.*

*Co.* v. *Ryan,* 114 Minn. 38, 129 N. W. 1055; *Beller* v. *Murphy,* 139 Mo. App. 663, 123 S. W. 1029; *Wetzell* v. *Jones,* 75 W. Va. 271, 84 S. E. 951.)   The cases so holding are too numerous to need to cite more and so numerous as to leave no room for question.

Section 8059, Revised Codes, 1921, provides: "The decision [2] of the members owning a majority of the shares or interests in a mining partnership binds it in the conduct of its business."

The partnership under consideration being, in our view, on the record before us, a mining partnership, in which there are three equal partners, the decision of two, a majority (owners of two-thirds' interest) binds the partnership in the conduct of its business. (*Boehme* v. *Fitzgerald,* 43 Mont. 226, 115 Pac. 413.)   The decisions generally uphold this right of the majority and give it ample scope. (*Dougherty* v. *Creary,* 30 Cal. 300, 89 Am. Dec. 116; *Hawkins* v. *Spokane Hydraulic Min. Co.,* 3 Idaho, 241, 28 Pac. 433; *Childers* v. *Neely,* 47 W. Va. 70, 81 Am. St. Rep. 777, 49 L. R. A. 468, 34 S. E. 828; *Blackmarr* v. *Williamson,* 57 W. Va. 249, 4 Ann. Cas. 265, 50 S. E. 254; *Bartlett & Stancliff* v. *Boyles,* 66 W. Va. 327, 66 S. E. 474.) There are numerous other decisions to like effect. The decisions here cited hold that the majority may bind the partnership in all matters necessary and proper to the conduct of the business; may control as to means employed; may control in all things necessary and proper to its operations; may take necessary steps to preserve the partnership property.

According to the established authority, in this instance, the [3] Courtneys, two of three partners, owning two-thirds' interest, certainly had the right to prevent the partnership from being deprived unjustly and unlawfully of its personal property, the tools and appliances for working the mine, the very means of conducting its operations, if they believed such personal property was being taken unjustly and unlawfully. Whether or not it was must be decided by the determination of the replevin action in question. We may consider now only

**8**   State ex rel. Cole *v.* District Court et al.   [Mar. T. '27

[79 Mont. 1.]

what the Courtneys believed and acted upon. It devolves upon them to prove it in another action. Therefore, we hold the Courtneys had the right, without consent of relator, to institute the replevin action.

Having that right, the Courtneys were within their rights when they named relator as a plaintiff in the replevin action. He was and is a proper party plaintiff. The action was brought in behalf of the partnership, in the names of the partners in a representative capacity, their capacity as partners. It was proper to unite all as plaintiffs. (2 Rowley on Modern Law of Partnership, 1109.)

Counsel for relator contend relator, having been opposed to **[4]** the institution of the action, should have been made a defendant. Except in an action for accounting and dissolution, it is held a firm cannot be divided and one part sue the other part, in regard to partnership business or property; that partner may not sue partner, in such matters. (2 Rowley on Modern Law of Partnership, 1022; Lindley on Partnership, 9th ed., 559; 30 Cyc. 461 and cases cited.) It was so held by this court in *Boehme* v. *Fitzgerald,* supra. A partner cannot maintain replevin against his copartner for any of the firm property. (2 Rowley on Modern Law of Partnership, 759; Lindley on Partnership, 9th ed., 670; *Buckley* v. *Carlisle,* 2 Cal. 420; *Mason* v. *Tipton,* 4 Cal. 276.) The remedy in such cases lies in an action for accounting and settlement of partnership affairs. (30 Cyc. 462 and numerous cases cited.) Therefore, relator would not be a proper party defendant in the replevin action.

Counsel for relator make various contentions which we deem untenable. They contend the Courtneys, for relief, should have resorted to the provisions of sections 9289 and 9290, Revised Codes, 1921. It may be they should have. We are not deciding that question. That is a question to be decided in the trial of the replevin action. The Courtneys having elected, for the firm, to bring a replevin action (which, in the end, may or may not be sustained) we are deciding only that it was proper

therein to make relator a plaintiff and that the district court did not err in refusing to sustain his motion to be dismissed as a plaintiff.

Relator complains he is being deprived of his liberty. He [5] is entitled to such liberty only as the law allows. He voluntarily surrendered a certain amount of his individual liberty when he became a partner in the partnership. He must have known each partner must yield to the partnership, so long as in existence, some part of his liberty of individual action, in matters within the scope of the partnership and its affairs.

Counsel for relator contend that, because, in his testimony, at the hearing of his motion, relator made the statement that it was his understanding that each partner was to be considered in the control of the property (of the partnership), the right of majority rule does not apply in this instance. We fail to see how that would disarm the majority of the right to prevent the partnership property from unlawfully being taken away from the partners, if the majority considered it was being so taken. The assertion that each of three equal partners is to be in control of partnership property asserts an impossibility. In case of differences, there can be no such thing as each of three people controlling the others.

Relator will not be deprived of his privilege, if he may desire to exercise it, in the trial of the replevin action, of being a witness for the defendant. There will be no restriction then upon his liberty to take any attitude he may choose to take in regard to the litigation.

Relator complains he is not allowed to employ, to represent him in the replevin action, the attorney of his choice. A majority of the members of a partnership may select counsel for the partnership. (1 Rowley on Modern Law of Partnership, 564.)

Counsel for relator make some other contentions which we deem equally untenable or not pertinent.

The writ of supervisory control, herein sought, is authorized [6] "to prevent a failure of justice, by supplying a means

for the correction of manifest error." (*State ex rel. Hubbert* v. *District Court*, 54 Mont. 472, 171 Pac. 784.) When there is no error to correct, it has, of course, no use.

We hold the district court, in making the ruling of which relator complains, did not err and, therefore, hold relator is not entitled to any relief for which he prays. The motion to quash is sustained and the proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.

Rehearing denied April 15, 1927.