Hart, J.,
 

 dissenting. No question as to the- merits of voting machines or the policy of their use is involved in this case. We are concerned only with the validity of the contract under review.
 

 The contract in question, designated in the record as “Exhibit D,” provides in simple language that the. Voting Machine Corporation agrees to rent to the board of elections of Trumbull county one hundred voting machines, sufficient to supply the election precincts of the entire county, at rental prices to be paid July first of each year, as follows: $10,525.72 plus cost of delivery of twenty-five machines to the county
 
 *472
 
 for 1938, and $8,675.58 each year thereafter, beginning in 1939 and including 1952, provided that if and when the total rental is paid from 1938 to 1952, inclusive, the company will at the option of the county, give it a bill of sale for the machines. It is further provided that the county may end the rental contract and purchase the machines outright in any year at a figure set out for each year as the purchase price. It is further provided, and this is an important consideration, that the
 
 county may elect at its option each year whether it will rent or re-rent the machines for the ensuing year
 
 by giving written notice of its intent so to do on or before April first and paying the rental on or before July first each year the machines are rented or re-rented. If they are not to be rented for any ensuing year the machines are to be returned to the company on or before May first.
 

 In other words, the contract is
 
 a year to year rental contract
 
 with option to purchase for a definite price at the end of any year, provided rentals have been paid for previous years. The machines may be surrendered on May first of any year, thereby terminating the contract, so that no future revenues are pledged for either rental or purchase and each new board of elections is free to retain the machines on a rental basis or return them in any year. It permits the board of elections the utmost freedom, if better or cheaper machines can be obtained at any time, to take advantage of such opportunity by cancelling this contract and returning the machines.
 

 There is no evidence in this record that the rental price is unfair or unreasonable. In fact the record shows that the annual rentals are but $150 more than the cost of conducting the elections by ballot. Neither is there any impeachment of this contract on the ground of abuse of discretion, bad faith, fraud, or even bad judgment on the part of county commissioners or board of elections who authorized and en
 
 *473
 
 tered into this contract, after an experimental nse of such machines in a portion of the voting' precincts of the county for two years prior to the date of the contract.
 

 The majority opinion reverts to the fact that in September 1937 the board of county commissioners decided not to purchase outright one hundred voting machines for $131,458.14, payable in installments over fifteen years, as a conclusive argument that they did not mean to authorize a rental of such machines over a fifteen-year period for a total rental of $131,983.84. But it must be remembered that in the rental contract they were not obligating themselves to pay the whole purchase price, but less than $9,000 per year as rental, with the privilege of cancelling the contract any year and in addition the option to purchase for cash for $98,000, and for lesser sums from year to year as shown in the schedule set out in the majority opinion. Prom a commercial viewpoint, it is difficult to see a sale rather than a rental in a contract which calls for installments in annual amounts not substantially greater than the annual savings in expense over holding elections by the ballot system, to continue for a period of fifteen years when the county would have the option to take title, especially when .there is taken into consideration the heavy depreciation and obsolescense in this type of complicated machinery. In other words, the cash value of these second-hand machines at the end of fifteen years of use would be, in the natural course of events, very small.
 

 In my opinion this contract is amply authorized by the election statutes of this state. In the first place, since this contract obligates the county to the extent of single annual rentals only, payable from current revenues, the board of elections would have authority to make such expenditures as a part of the annual election expenses of the county as provided for in Section 4785-20, General Code.
 

 
 *474
 
 Section 4785-161» provides that, “When voting machines have been authorized [by the board of county commissioners] or adopted [by the majority vote of the electors], a sufficient number of machines shall be
 
 purchased or rented
 
 by the board of elections so that all polling places within such county, * * * shall be equipped with voting machines.” (Explanations in brackets and italics mine.) In the same section is the following provision: “If it shall be impracticable to supply each election precinct with a voting machine or voting machines at
 
 any
 
 election following such adoption, or authorization, as many shall be supplied for that election as it is practicable to purchase or rent * * *, but the additional voting machines necessary to supply all precincts shall be purchased and installed at the next succeeding election * * *.” (Italics mine.) But this portion of the section, whatever it may mean, has no application here because the contract in question calls for the rental of all the machines necessary to supply all the precincts of the county.
 

 The majority members of this court invalidate this contract by what, in my opinion, is a super-technical and strained construction of the language used by the board of county commissioners in its resolution authorizing the board of elections to enter into the contract in question. The resolution is quoted in the majority opinion, and will not be repeated in full here. It will be noted that the board of commissioners says: “After giving careful consideration to the question of the
 
 pm chase
 
 * * * of voting machines * * * it has been: Moved * * * that the recommendation * *
 
 *
 
 submitted by the Trumbull county board of elections, recommending the acquisition of voting machines for use at elections in Trumbull county, be hereby acknowledged and the board of county commissioners * * * authorize the acquisition of such voting machines
 
 out of cmrent reverme
 
 [the annual budget of the board of elections] .in accordance with Sections 4785-161 and 4785-161a,
 
 *475
 
 of the General Code of Ohio; such contract for the
 
 acquisition
 
 of said voting machines shall be submitted to and approved by the board of elections.” (Italics mine.)
 

 The majority of this court insists that the word “acquisition” used in this resolution means “purchase” and only “purchase,” and cannot be construed to comprehend “rental.” I think, for very good reasons, it may comprehend either or both according to the context and intent of the parties using the term in question. The board of elections at their meeting September 11, 1937, passed a resolution to the effect that they equip the entire county by renting one hundred machines; at the meeting of the board of elections held November 5, 1937, the board recommended to the county commissioners the “acquisition” of the machines ; on the same date the’ county commissioners adopted their resolution. This board says, “giving careful consideration to the question of purchase,” we authorize “acquisition” and repeat that term several times, departing entirely from the term “purchase.” They authorize such “acquisition” out of “current revenue” when they must have known that the board of elections had no such budget as would permit the purchase from current funds. The commissioners in their resolution also give their authority, “in accordance with Sections 4785-161 and 4785-161®.” If the authority was to purchase, only Section 4785-161 need be mentioned; but when they include 4785-161® they must have had in mind rental because such type of acquisition is authorized by this section.
 

 Furthermore, the county commissioners had previously, under date of September 15,1937, sent a letter to all county officials, including the board of elections, about revenues and budgets, the last paragraph of which is: “You are cautioned not to incur any obligations for 1938 in anticipation of an increased budget for at this time the board is in no position .to state
 
 *476
 
 whether extra funds will he available.” Does it appear reasonable, in the face of this letter to the board of elections, that they, the board of county commissioners, intended to authorize the purchase of one hundred voting machines at a cost of about $130,000 when the whole annual budget of the board of elections for the preceding year, as allowed by the county commissioners, was about $30,000? '
 

 We need look only to the majority opinion to see that the word “acquire” has been used to comprehend the securing of voting machines by rental. The majority opinion says: “There are two principal methods and one exception by which voting machines may be
 
 acquired
 
 for an entire county or municipality.” (Italics mine.) The third of these methods referred to is described by the writer in the words of the statute, which are: “Then such board of county commissioners or legislative authority of such municipality, as the case may be, shall provide for the purchase or rent of such machines in the manner herein provided. ’ ’
 

 The word “acquisition” is used in Section 4785-20, General Code, a part of the election laws, in a sense that cannot in every instance mean “purchase.” It provides that "the board of elections in providing funds for its work shall include “the expenditures for the acquisition, repair, care and custody of polling places, booths, guard rails and other equipment for polling places * * *.” (Italics mine.) The use of the word “acquisition,” with reference to polling places, certainly does not mean that the board must purchase a polling place in each precinct. It must be a matter of common knowledge that the great majority of polling places are acquired by rental. Clearly it means that the board may acquire a polling place by lease or rental, as it may also do in case of voting machines.
 

 In many of the statutes of this state giving county commissioners and municipal authorities the right to acquire property, the acquisition is permitted by pur
 
 *477
 
 chase or by lease indicating that the word “acquire” may comprehend either purchase or lease or both. To illustrate, Section 2421, General Code, provides that: “When the commissioners deem it unnecessary to the construction of any bridge and the approaches thereto to acquire the entire land upon and over which the same shall be located, they may acquire such part of such land and such easements and rights in the remainder thereof as they shall deem necessary and sufficient for such construction.”
 

 Section 3615, General Code, provides that “Each municipal corporation * * * may * * * acquire property by purchase, gift, devise, appropriation, lease, or lease with the privilege of purchase, for any municipal purpose authorized by law * * The authorities hold that property may be “acquired” by lease
 
 (State, ex rel. Cole,
 
 v.
 
 District .Court, 79
 
 Mont., 1, 254 P., 863); that “acquire” does not necessarily mean the taking of a fee
 
 (Harris
 
 v.
 
 Bedell Co.,
 
 222 App. Div., 467, 226 N. Y. Supp., 513); and that rights are “acquired” other than by purchase
 
 (Allen et al., Trustees,
 
 v.
 
 Commissioner of Corporations and Taxation,
 
 272 Mass., 502, 172 N. E., 463, 70 A. L. R., 1299).
 

 ■The word “acquire” is not a complete synonym for “purchase.” It comes from the Latin
 
 acqmrere,
 
 meaning primarily to seek, to obtain, to gain by any means; as to acquire a title, but it may be a fee or any lesser interest. (See Anderson’s Dictionary of Law and March’s Thesaurus Dictionary.) The word “acquire” is more comprehensive than either purchase or rent and includes both. As I see it, the board of elections could acquire these voting machines either by purchase or rental.
 

 Even if the term “acquisition,” used in the resolution of the board of county commissioners authorizing the board of elections to supply voting machines for Trumbull county, be construed to mean “purchase,” it must be remembered that words granting author
 
 *478
 
 ity pertaining to the administration and proprietary powers, must be liberally construed, and when so construed the authority to purchase includes the lesser authority to rent.
 
 Galloway
 
 v.
 
 Road Improvement District No. 4 of Prairie County,
 
 143 Ark., 338, 220 S. W., 450.
 

 The majority opinion concedes that the board of elections, under Section 4785-161», may temporarily rent voting machines to equip all precincts until a full quota can be supplied under contract or purchase. Even if this limited view of the statutes be taken, there is nothing in this contract which is inconsistent with such a plan. The contract is good in its inception and has not yet been violated.
 

 Complaint is made that no bond was filed as provided for by Section 4785-161», but a reading of this section shows at once that a bond is required only when voting machines are purchased. Under this contract, if and when the machines fail to work they may be returned to the company. If the county should decide to purchase the machines, then, and not till then, could a bond be required.
 

 This case was tried to a painstaking, competent trial judge, who found no infirmity in this contract. His judgment was affirmed by the Court of Appeals and should be affirmed by this court.
 

 Williams and Matthias, JJ., concur in the foregoing dissenting opinion.