# CHARLESTON.

### L. KAUFMAN *v.* AARON CATZEN *et als.*

Submitted March 1, 1922.    Decided April 11, 1922.

1.   JOINT ADVENTURES—*Where One of Two Lessees Furnished all the Money to Develop Property, He is Entitled to Reimbursements from Net Profits.*

    Where one of two lessees accepts a lease of land to be converted into a profit producing investment and concedes to the other a one-third interest in the profits to be derived from the joint enterprise in consideration of the payment by the latter of a stipulated amount which he does pay, coupled with the assurance of an additional amount, which he does not furnish, to develop the property, and the lessee named in the lease does advance it, he is entitled to reimbursement out of the earnings of the enterprise, in the ascertainment of the amount of the net profits derived from the enterprise. (p. 721).

2.   SAME—*Not Entitled to Appropriate Profits for Salary in Absence of Express Agreement.*

    In such case the lessee named in the lease, though the active manager of the leased premises, can not lawfully appropriate part of the revenues derived from the property for

his own use, in the payment of a salary, in the absence of an express agreement to that effect.   (p. 724).

3.  SAME—*Agreement Between Lessees Held Not to Entitle Manager to Salary.*

Where there is no such agreement, and the lessee so named agrees to assume control and management of the property for and in behalf of himself and his associate in the enterprise upon the condition that his "energy" shall off-set interest on the amount so advanced and expended, the lessee so named is not entitled to and can not demand payment of a salary.   (p. 724).

4.  SAME—*One Supplying All the Funds to Improve Property is Entitled to Reimbursement Before Distribution of Profits.*

Funds derived from the sale of the capital stock of a corporation, organized by the active party to a lease contract, made to supply funds necessary to improve the property leased, his co-lessee having promised to provide such funds, but having failed or refused to provide them, should be repaid, with interest thereon, out of the earnings derived from the property before a distribution of profits, if any result from the enterprise.   (p. 724).

5.  SAME—*Damages Not Allowed for Defendant Joint Adventure's Antagonistic Delay of Property Improvement.*

A case in which damages charged to the antagonism of one of two lessees against the other, said to have delayed the improvement of the property, are discussed but not allowed.   (p. 728).

(RITZ, JUDGE, absent.)

Appeal from Circuit Court, McDowell County.

Suit by L. Kaufman against Aaron Catzen and others. Decree for plaintiff, and defendants appeal.

*Reversed and remanded.*

*Russell S. Ritz* and *Sanders, Crockett, Fox & Sanders,* for appellants.

*D. J. F. Strother* and *Chapman, Peery & Buchanan,* for appellee.

LIVELY, JUDGE:

The opinion delivered upon a former appeal, then as now Aaron Catzen, Clark Development Company and L. H. Clark being appellants, settled the principles of the cause as developed by the proof theretofore taken. *Kaufman* v. *Catzen,* 81 W. Va. 1, L. R. A. 1918-B. 672. One of the questions discussed, as applied to the facts involved at that time, was as to the validity of Kaufman's claim to a one-third interest in the profits derived and derivable from the control, management and improvement by Catzen of the 44 acres of land leased in the name of Catzen from Northfork Realty Company August 27, 1907. This claim the opinion sustained, notwithstanding Kaufman's refusal or failure to provide the $20,000.00, as he assured the lessor's officers he would do, to aid in the improvement of the property, so as to convert it into a profitable investment, and also notwithstanding Catzen's incorporation of Clark Development Company, and his assignment of the lease to that company, Catzen being the owner of a controlling interest in the company and its general manager. Nevertheless Kaufman was to be held liable in a settlement of the accounts arising out of the management of the leasehold, and especially for any delays in its development caused by his opposition to the efforts of Catzen and the corporation, upon whom fell the financial burden of its betterment for the purposes of the lease, to obtain a saloon license.

It is shown by this record and the former one that the basic object of Kaufman and Catzen in securing this lease was to establish saloons on the lease, and incidentally to improve it as a town site. Kaufman did not desire to be known in the lease, and an agreement was entered into between him and Catzen for the purpose of showing their joint interests therein. The $30,000.00 paid by Kaufman to the Northfork Realty Company as rentals for 5 years was his contribution to the adventure, for which he was to have a one-third of all the rents, issues and profits arising from the use and occupancy of the land. Catzen was to have control and management of the enterprise. Catzen had very little money, and it is not clear from what source the money for the develop

ment was to be derived. Catzen says Kaufman was to contribute $20,000 for that purpose, but that fact does not appear in the agreement. It was omitted, Catzen says, at Kaufman's request. Afterwards Kaufman wanted the contract changed so that he would have equal authority in determining the erection of buildings, and in the management and control of the property; and further, that he should be paid back his $30,000.00 out of the rents, issues and profits and retain his 1-3 interest in the profits. Catzen would not agree to this radical change, and thereupon the differences arose, culminating in this litigation. From that time Kaufman seems to have made diligent effort to thwart the enterprise. He tried to prevent Catzen from procuring liquor license, and succeeded in doing so for several months. He did not contribute the $20,000.00, nor any sum. Catzen went to work to develop the property, and, between the year 1907 and September 1st, 1912, he spent about $63,000.00 in building retaining walls, laying out streets, constructing water works, building houses and generally in improvement of the property. Of this sum he obtained $20,000 from his brother, Morris Catzen, $20,000 from the Flat Top National Bank, $10,000 from Dr. Clark, and the remainder from sales of his and his wife's property, savings of his children, and from his business, presumably his saloon business. When the development company was incorporated and took over Catzen's interest in the enterprise on September 1, 1912, $30,000 of its stock was issued to Morris Catzen which represented the sums contributed by him, he having assumed and paid $10,000 of the bank debt, and $10,000 stock to Dr. Clark, representing the sum contributed by him. The other portion of the bank debt, $10,000 had been paid by Catzen out of the rents collected up to that time. As a result of Catzen's efforts, ground rents were obtained, business houses, hotels and dwellings were erected, all bringing in rents, and the premises were incorporated as a municipality. Kaufman contended that he was to have this $30,000.00 advanced by him repaid before any profits were divided, and then he was to take 1-3 of the profits afterwards made. He seems to have contemplated that Catzen would make money, presumably

out of the liquor business on the premises, and pay back the $30,000 in yearly instalments from that source, and the "creditors could wait a year or so." Evidently it was contemplated that the "creditors" were those persons from whom the money was to be obtained to develop the lease. Kaufman agreed with the lessor to back Catzen in the development. If he had not done so the lease would not have been made. Just how much he was to contribute for that purpose does not appear from the testimony of Clark, Tierney and Lincoln. Catzen says it was $20,000.00. Kaufman refused to contribute any sum, and, as stated, he became an enemy of the enterprise when Catzen refused to change the original contract in the particulars set out. On the former appeal we decided that Kaufman, although he had breached his contract, had not forfeited his $30,000.00 and was entitled to a 1-3 interest in the profits. Are there any profits? This is the question which arises on this appeal from the decree based upon the commissioner's report. The commissioner found there were no profits, but the decree which sustained exceptions to the report ascertained the profits to be $37,756.44. It must be remembered that Catzen's contribution to the venture was time and energy as against Kaufman's $30,000, and on this basis Kaufman was to have one-third of the profits and Catzen the other two-thirds. But Kaufman failed to further cooperate after paying in the $30,000, and the burden fell upon Catzen to develop the lease and carry on the venture or abandon it. The monies which he raised for that purpose should be returned to him and to those from whom obtained before there can be any profits paid out. It follows that being entitled to a return of the money contributed, he is entitled to interest thereon from the time it was advanced and used for the common purpose. Had Kaufman furnished the $20,000 for improvements he would have been entitled to its return with interest, before division of profits. So far as the joint venture was concerned, any advancements used for development were in the nature of a loan to which legal interest should be added, when repaid. From the present record we do not find sufficient data on which to base a calculation of interest on the monies

furnished as advancements. The houses and improvements placed on the land belong to the joint enterprise, together with the value of the lease thus enhanced. But the funds raised by Catzen and expended for that purpose, being a burden, shouldered by him and not incumbent upon him to assume under the agreement, it is clear that such funds together with interest thereon should be repaid before division of profits. *Bartlett* v. *Boyles,* 66 W. Va. 327.

The Clark Development Company simply takes the place of Catzen in the transaction. The money it advanced, if any, to the enterprise is likewise in the nature of a debt.

The purpose of the suit, it is well to remember, is not a dissolution of the relation existing between the parties interested in the enterprise and the conversion of the property into liquid assets, preparatory to a final division among them, as their interests may then appear. On the contrary, the apparent purpose is the ascertainment of the true status of the parties to each other and a statement of the account upon an adjustment of the revenues derived from the lease, and the amount of money expended to put the leased premises upon a profit producing basis to the date of the entry of a final decree in the cause. Both plaintiff and defendants excepted to certain items in the commissioner's report of receipts and disbursements, and the true status of the account as it now appears depends upon a disposition of these exceptions.

The witness who has the only reliable knowledge of the collections and disbursements is Catzen, and the amount received by him directly from the property up to September 1, 1912, is $24,175.43, and by Clark Development Company from that date to September 1, 1918, $200,342.26, or by both, $224,517.69. Up to September 1, 1912, Catzen expended for improvements $60,000.00, as shown by the report, and after that time Clark Development Company $142,431.79, or a total of $202,431.79. Sixty thousand dollars of the amount expended by Catzen prior to September 1, 1912, he derived not from the property, but, he says, from Morris Catzen $20,000, from Flat Top National Bank $20,000, and the remainder from the sale of his and his wife's property, from

savings of his children, and money from his saloon business. The $142,431.79 the decree, by sustaining Kaufman's exceptions, reduced to $126,741.28.    The items deducted are $3000.00 for the services of a bookkeeper during the years prior to September 1, 1912, $6,279.30 for attorneys' fees and costs of the suit, $50.00 subscribed and paid for the use of the Red Cross, $500.00 for War Savings Stamps, $500.00 for Liberty Bonds, $617.71 for corporation charter tax, $200.00 loaned to New Star Theatre, and $4,543.50 an unitemized account; a total of $15,690.51. Under the conditions existing at the time of the Red Cross subscription and the purchase of the stamps and Liberty Bonds, there seems to be no sound reason for their exclusion from the credit side of the account, as their purpose was patriotic and commendable, moreover, they and the $200.00 loan are assets of the company for distribution, to be accounted for when its affairs are finally adjusted. Nor does there seem to be a valid reason for the disallowance of the $4,543.50. The failure to itemize it does not necessarily subject it to condemnation, as many of the payments were in gross, not by items, nor is their inclusion among the expenditures sufficiently obvious to warrant their exclusion, and for these reasons we are of opinion to restore them to the credit side of the column. As to the other items disallowed by the decree, the action of the court is not erroneous. The evidence of service rendered by the bookkeeper on behalf of Catzen or Clark Development Company is not satisfactory. He was in the employment of Catzen at the time the service was rendered, it is true, but primarily to manage his, Catzen's saloon, not as a keeper of books for Catzen or the corporation.    The whole amount credited to the account for the salary of Catzen was not proper. The original agreement between him and Kaufman was that his "energy" should in effect offset interest on the $30,000.00 advanced by Kaufman, and as appears, the annual interest on that amount is the same as the annual salary credit. But in no event can one partner charge for his services, unless authorized by an agreement between him and his associates. *Gay* v. *Householder*, 71 W. Va. 277, 76 S. E. 450. By adjustment and consolidation of these items in the

manner indicated, that is, the exclusion from the account of the bookkeeper's $3000.00, Catzen's salaries $13,650.00, lawyers' fees and court costs $6,279.30, charter and stock tax $617.71, or a total of $23,547.11, and the restoration of the Red Cross contribution, War Savings Stamps and bonds, the unitemized larger amount and the $200.00 loan, the net result is an expenditure by Clark Development Company of $118,884.78 ($142.431.79 minus $23,547.01), to which must be added the expenditures by Catzen $60,000, making a grand total expenditure of $178,884.78. In view of all the items so far considered, there is an apparent net profit of $45,632.91. This balance, however, is arrived at without considering appellant's exceptions. They dispute the correctness of the charges against them for receipts from the property. These charges represent six receipt items, aggregating $71,513.99. These items are for taxes, sales of the Clark Development Company's capital stock owned by Catzen, and by him, it seems, sold to his brother, Morris, L. H. Clark and others, money borrowed, in part from Flat Top National Bank and in part from Clark National Bank. There is no serious difficulty in reconciling the contention as to taxes. While assessed against the leased premises as a whole or in part only and paid by Catzen or Clark Development Company, they were collected from tenants as part of the rent payable by them, as Catzen admits, and being so charged and paid and recharged to the tenants, we see no impropriety in holding Catzen and Clark Development Company accountable for the amount. As to the $30,000.00 for stock sold to Morris Catzen and $10,000 for stock sold to Clark, it is clear that they should not be included in income received from the lease. The stock sold to Morris Catzen represents $20,000 in money which he furnished for the development prior to September 1, 1912 and before the Clark Development Co. was incorporated, and the assumption and payment of $10,000 of the loan of $20,000 from the Flat Top National Bank, which was also used in development prior to that date. Nothing has been repaid to him. The same can be said of the $10,000.00 for stock sold to Clark. The item of $11,-348.95 listed as ''stock sales and other collections'' is not

so clear. We find no explanation in the record. The item
appears in the exhibit of receipts and expenditures filed
with Catzen's answer to plaintiff's amended and supplemental
bill, in which there appear the other items of money borrowed
for the furtherance of the enterprise, also listed as receipts
from the business. We note that stock of the Clark Devel-
opment Company was sold to Sonnenberg for $5000.00, for
which he gave his note which was never paid and has never
been used; also $1000.00 stock to Schwartz which does not
seem to have been paid in. Whether this item of $11,348.95
was intended to include these sales to Sonnenberg and
Schwartz, we cannot say. We note further that Little, the
accountant who audited the books, reports the $5000.00 note
of Sonnenberg as a receipt of the Development Company.
We also note that stock in the Clark Development Company
to the amount of $54,000 was issued to A. Catzen, and it is
not clear just what amount of money he put in the enter-
prise, or if any of it is represented in this item of $11,348.95.
The meagerness of the evidence will not justify us in the
present state of the case to allow this item as an income from
the property. The other two items, $10,000 and $5,000 bor-
rowed from the banks by Clark Development Co., were re-
ceived by that company, and it should be charged with the
receipt thereof, as shown in the report, as these amounts
were paid to the banks by the company out of the receipts
from the joint enterprise, thus making a debit with its cor-
responding credit. The money was borrowed and expended
on the property and the development company took credit
as it made the disbursements for improvements; it again
took credit in its disbursements when it repaid the loans out
of the receipts. Hence, we can see no good reason why the
exception to these two items should be sustained. By strik-
ing from the amount reported as total income the three items
of $30,000, $10,000 and $11,348.95 ($224,517.69 less $51,-
348.95) we have as total receipts $173,168.74 as against total
expenditures of $178,884.78. There seems to have been no
profits at the time of the decree.

There is in the report no ascertainment of the unpaid
liabilities of Catzen and the Clark Development Company,

and no requirement in the order of reference for such an ascertainment as there should have been to settle and adjust all matters pertaining to the exploitation of the premises, not for the purpose of winding up the affairs of the joint enterprise, but to enable the court to determine the equities between the parties. The result of such an additional investigation would have enabled the court to determine with more certainty the relative rights of the parties.

Another issue to be discussed is the sufficiency of the proof of damages attributable to the antagonism of Kaufman, but for which the earning capacity of the property would have developed earlier than it did, according to Catzen's contention. Under this heading the report shows $6,604.45, and charges one-third of the amount ($2,201.48) to Kaufman, and two-thirds to Catzen. That is, Catzen should bear the greater portion of the burden chargeable to the wrongful conduct of his associate. Evidently this apportionment speaks its own inequality. But the decree disallowed the whole amount. Not only was the amount so found inadequate, according to counsel for Catzen, but they say it should have been much larger.

While Kaufman did not, as he should have done, being vitally interested in the success of the joint enterprise, render the encouragement and financial assistance necessary for the development of the property, his failure was due in a large measure, if not wholly, to an estrangement between himself and Catzen, beginning soon after the date of the lease. The difficulty between them manifested itself not so much in the failure of Kaufman to provide the $20,-000.00 that he assured the lessor and Catzen he would provide, but in using his influence with members of the county court to prevent Catzen from obtaining license for a saloon on the property; and because of the resort to this direct method of approach to the licensing body, Catzen was compelled, he says, to obtain the assignment of a license granted to another saloon keeper, and for the same reason or cause to establish and stock a saloon for negroes, in order to counteract Kaufman's political influence in the county and to receive recognition for himself by politicians of the county.

So that, as observed, it was not the failure to provide the $20,000.00, for that amount and more Catzen obtained, apparently without serious inconvenience, that delayed the conversion of profitless real estate into a profitable investment. And while the record abounds with proof pro and con upon this feature of the cause, it can not reasonably or justly be said that the court erred in sustaining plaintiff's exception to the amount of damages reported by the commissioner.

The greater part of the proof of damage relied on by appellants as chargeable to Kaufman's antagonism tends to show a necessity for the sale of Catzen's property not involved in the administration of the leased premises, the proceeds of which sales he expended to fit the premises for the purpose of the lease. He does not ask to have the proceeds of the sales returned, or say they have been returned to him out of the earnings of the property. What he does insist upon is the right to be credited with rents that would have accrued and that he would have collected but for such sales. The effect of this insistence on his part, would, if sanctioned, be a double source of profit to him, that is, rents augmented by interest, and a share of the earnings from the property to the production of which the rents contributed. Moreover, he seems to have had more confidence in the earning capacity of the property than in that of the houses sold by him. Careful reading of the decisions cited by appellant's counsel fails to show in what respect, if at all, they have any bearing upon the question under discussion. They deal with the valuation of property for condemnation purposes. The sums realized by him from the sale of his properties, as well as all of the other sums which he personally furnished to make the adventure a paying one, are properly returnable to him, and the interest thereon is the measure of his damages for the use thereof.

Nor is there any convincing reason advanced for denying Kaufman the right to participate in the rents, issues and profits, from whatever source obtained, except from business transacted by tenants on the 44 acres, including the saloon business conducted by Catzen. The property, not the busi-

ness on it, is the source from which the profits are to be derived that the parties contemplated when they leased it, not what any of their tenants made as a result of their own individual resources or ability. These profits include not only ground rents but house rents also and rents from buildings occupied by tenants. Catzen did not agree, and does not now consent to divide what he may have earned in business on the land, apart from the land itself. If he, or the corporation organized by him, erected the building in which he conducted the business, he is chargeable with the rent.

Our conclusion, therefore, is to reverse the decree and remand the cause, with direction to order another reference to revise and restate the account, showing: (1) The debts and liabilities of the joint enterprise; (2) the advancements made by any party, the dates thereof, the interest thereon, and any payments made toward the reduction thereof out of the revenues or assets of the enterprise; (3) the receipts and expenditures since the former report of Commissioner Marshall in the cause, together with a statement, showing the funds on hand, including any liquid assets.

*Reversed and remanded.*